NEBRASKA DISTRICT OF EVANGELICAL LUTHERAN SYNOD
ET AL., APPELLEES, V. SAMUEL R. MCKELVIE ET
AL., APPELLANTS.

FILED APRIL 19, 1922.   No. 22424.

1.  Schools and School Districts: FOREIGN LANGUAGE LAW: CONSTI-
    TUTIONALITY.  The statute (Laws 1921, ch. 61), relating to the
    teaching of foreign languages, is a reasonable exercise of the police
    power and is not unconstitutional, as being in violation of either
    the state or federal Constitution.

2.  ———: ———: ———.  In its operation it does not deprive
    any person of life, liberty or property without due process of law,
    nor does it deny the equal protection of the law; nor is it invalid,
    as a restriction upon the freedom of religious worship, nor as an
    unwarranted interference with the giving of religious instruction.

3.  ———: ———: ———.  The title of the act, declaring that all
    school branches are to be taught in the English language, is suf-
    ficiently broad to cover provisions regulating and prohibiting the
    teaching of foreign languages.  Such provisions are germane to the
    subject-matter expressed in the title and are reasonably calcu-
    lated to aid in carrying out the expressed object.

APPEAL from the district court for Platte county: FRED-
ERICK W. BUTTON, JUDGE.  *Reversed and dismissed.*

*Clarence A. Davis, Attorney General, Mason Wheeler,
Charles S. Reed* and *Otto F. Walter,* for appellants.

*Sandall & Wray, A. F. Mullen* and *Albert & Wagner,*
contra.

*Joseph T. Votava, Earl M. Cline, Guy C. Chambers, Pit-
zer, Cline & Tyler, Robert G. Simmons, Brogan, Ellick &
Raymond, Fred W. Ashton, Sackett & Brewster, Edward P.
McDermott, Holmes, Chambers & Mann, T. J. McGuire,
Hastings, Ritchie, Mantz & Canaday, Spillman & Muffley*
and *Mothersead & York, amici curiæ.*

Heard before MORRISSEY, C. J., ROSE, DEAN, ALDRICH,
DAY and FLANSBURG, JJ.

Nebraska District of Evangelical Lutheran Synod v. McKelvie.

FLANSBURG, J.

This is an injunction proceeding brought to test the constitutionality of the statute (Laws 1921, ch. 61) relating to the teaching of foreign languages. Without passing upon the propriety of the form of action pursued, we find that the questions presented are largely controlled by the decision in *Meyer v. State,* 107 Neb. 657, upholding a similar statute enacted in 1919.

The 1921 statute, after declaring that the English language shall be the official language of the state and that the common school branches shall be taught in that language, provides:

"Section 2. No person, individually or as a teacher, shall, in any private, denominational, or parochial or public school, teach any subject to any person in any language other than the English language.

"Section 3. Languages other than the English language may be taught as languages only, after a pupil shall have attained and successfully passed the eighth grade as evidenced by a certificate of graduation issued by the county superintendent of the county or the city superintendent of the city in which the child resides. Provided, that the provisions of this act shall not apply to schools held on Sunday or on some other day of the week, which those having the care and custody of the pupils attending same conscientiously observe as the Sabbath, where the object and purpose of such schools is the giving of religious instruction, but shall apply to all other schools and to schools held at all other times. Provided, that nothing in this act shall prohibit any person from teaching his own children in his own home any foreign language."

The law is not directed at the teaching of the German language only, but applies to all foreign languages. The so-called ancient or dead languages, not being, strictly speaking, foreign languages, obviously do not come within the spirit or the purpose of the act.

The objections raised resolve themselves into one question: Is the enactment a proper police regulation, reason-

ably calculated "to promote the health, peace, morals, education or good order of the people," and therefore a regulation excepted from the scope of the constitutional provisions, both state and federal, which prohibit the taking of life, liberty or property without due process of law, and which guarantee the equal protection of the law, and preserve the right of freedom in religious worship?

The reasons found by the legislature for this enactment, we believe, are set out in ur opinions in *Nebraska District of Evangelical Lutheran Synod v. McKelvie,* 104 Neb. 93, and *Meyer v. State, supra.* The legislature intended that the English language should become the universal language of the state; that children of foreign parentage should be so reared and educated that English would come to be their natural language and the language which they would continue to use. Children of foreign parentage, first starting to school, are able to speak the language of their parents. That language is at that time the one naturally favored by them. The requirement, that children who have not passed the eighth grade shall in language study apply themselves exclusively to the English language, so that English shall be mastered and become the more favored one, we are not ready to say is a measure more stringent than is warranted, nor that the legislature has acted without reason and in a purely arbitrary manner. The law does not create an absolute prohibition against the learning of a foreign language. It only postpones and regulates that teaching. There is no curb on knowledge. Such children have a sufficient task to master English in what time and opportunity is available to them for language study. When the child becomes sufficiently versed in English, which, in the eyes of the law, is when he has passed the eighth grade, and has received the instruction in English which necessarily goes with that extent of education, when that language has become his language, then he is free to study whatsoever language he pleases. The statute was enacted in a jealous regard to further and assure the universal use of English, and, as

a means to that end, to curtail, so far as could reasonably be done, the rearing of children of foreign parentage in the language of their parents. As pointed out in the *Meyer* case, in operation the law will be recognized as a restraint almost entirely and alone by the foreign element of our population. It is true, in some instances, that there may be other persons who will desire to have their children instructed in a foreign language before the children have passed the eighth grade, but the reasonableness of the law is to be determined by the general class upon which it operates, and the general object and remedy sought to be attained, and individual rights must yield to the general public benefit.

The pleadings in this case show that both the intervener, as well as other parents of children of the schools, affected by this act, have a knowledge of the English language, as well as a knowledge of the language of their own country; that their knowledge of English, though sufficient for business transactions, is so limited that they are unable to impart religious instruction to their children, and are unable to conduct religious worship in English. This is the very condition the legislature seeks to change. The whole object and purport of the law is to the end that it will bring about a condition where the English language will be the favored one.

It is claimed that the law is discriminative. It applies, however, to all schools generally. It covers all of the schools where, it is well known, children now receive their education. It operates equally upon all children who have not had an eighth grade education and a knowledge of English which will be consequent therefrom. Private instruction by a hired tutor, whether within or without the scope of the law, is instruction which is negligible in its extent. In either event, the law operates in that matter without discrimination. The use and resulting knowledge of a foreign language in the home is not restricted, nor is instruction there prohibited. The exception of Sabbath schools from the law has been placed there with the evident pur-

pose of preventing interference with religious exercises. It is not essential to the validity of the law that it should be a complete and absolute prohibition against the teaching of foreign languages. It was not intended to be such. The law is a regulation of such teaching, and not a prohibition. The qualifications made are not without reasonable basis, and cannot be said to be purely arbitrary.

As was said in the case of *Wenham v. State,* 65 Neb. 394, 404: "The members of the legislature come from no particular class. They are elected from every portion of the state, and come from every avocation and from all the walks of life. They have observed the conditions with which they are surrounded, and know from experience what laws are necessary to be enacted for the welfare of the communities in which they reside. They determined that the law in question was necessary for the public good. * * * That question was one exclusively within their power and jurisdiction and their action should not be interfered with by the courts, unless their power has been improperly or oppressively exercised."

In the case of *Barbier v. Connolly,* 113 U. S. 27, in speaking with regard to the exercise of police power, the court, referring to the Fourteenth Amendment of the Constitution of the United States, said (p. 31) : "But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people. * * * Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring

others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

It appears to us that the law is a reasonable exercise of the police power and is not unconstitutional, as in violation either of the state or of the federal Constitution. In its operation it does not deprive any person of life, liberty or property without due process of law, nor does it deny the equal protection of the law. It does not interfere with religious liberty nor with the giving of religious instruction.

It is claimed that the portion of the act which is quoted in this opinion is not embraced in the title. The title of the act reads as follows: "An act to declare the English language the official language of this state, and to require all official proceedings, records and publications to be in such language and all school branches to be taught in said language in public, private, denominational and parochial schools; and to prohibit discrimination against the use of the English language by social, religious or commercial organizations; to provide a penalty for a violation thereof; to repeal chapter 249 of the Session Laws of Nebraska for 1919, entitled 'An act relating to the teaching of foreign languages in the State of Nebraska' and to declare an emergency."

The title of the act is admittedly broad enough to cover a provision declaring that the English language cannot be taught by means of a foreign language, but plaintiffs contend that the title is not broad enough to cover a provision preventing the teaching of a foreign language in English. When we consider the object of the statute, the distinction is somewhat refined. It is the employment of a foreign language in school which is manifestly aimed at. A foreign language cannot be taught without, in some degree, employing that language in the teaching of it. The legislature could properly have defined language as a subject contemplated to be within the scope of the phrase "all school

branches." We cannot say that the legislature did not so use the phrase. The term "school branches" has no strictly limited meaning. Under the title of the act, no one denies but that it is proper to require that reading, writing and spelling shall be taught in English only. How, then, could a foreign language be taught, except in a very limited degree, without teaching reading, writing, and spelling in that language? The means of teaching a foreign language are so interrelated with the problem of requiring all school branches to be taught in English, only, that a provision in the statute, regulating the teaching of foreign languages, seems to us to be entirely consistent with the subject as expressed in the title, and a provision properly calculated to aid in carrying out the expressed object sought to be attained.

The judgment of the lower court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.

MORRISSEY, C. J., dissenting.

Chapter 61, Laws 1921, in the main, is calculated to prohibit and penalize the teaching, in a school, of languages other than English. The history of the ages dead and gone reveals that every forward step in science and philosophy met with opposition and oftentimes with persecution, but, notwithstanding this opposition, learning spread, the human mind expanded, and knowledge of the arts and sciences reached the multitude. We have been wont to look upon the proscriptions of the past with charity because of the age in which they occurred, but, now, in the twentieth century, the majority opinion sustains a statute as a reasonable exercise of the police power that proscribes the teaching of modern languages, in a school, although it sanctions the teaching of such languages if done by a private tutor, or a parent, in the home. If the teaching of such languages is vicious and harmful, it must be so when done by a private tutor, or by a parent, in the home. If not hurtful to the state when taught by a private tutor or by a parent, in the home, how can it be said to be harmful

to the state when taught in a school, when such teaching is not permitted to impair the work of the child. in the common branches of learning.　I cannot regard as a reasonable exercise of the police power a provision which arbitrarily forbids the acquisition of useful learning—learning that is not harmful in itself, learning that the well to do parent may employ a private tutor to impart to his child, or that the cultured parent may personally impart to his child, if not done in a school.　The police power has never been held to extend to the prohibition of acts not injurious to society or which cannot reasonably be said to be harmful to the public welfare.　It is an arbitrary classification which reason will not support.　The provision declaring the English language to be the official language of the state and the provisions requiring the teaching of that language in all schools of the state are proper, and no person complains of them or questions their validity, but those provisions that prohibit the teaching of other languages, in a school, even though such teaching does not interfere with the school course prescribed by proper authority, in my judgment, violate the provisions of both the state and federal Constitutions.　I, therefore, dissent from the holding announced and adhere to the opinion of this court in *Nebraska District of Evangelical Lutheran Synod v. McKelvie*, 104 Neb. 93, and to the dissenting opinion in *Meyer v. State*, 107 Neb. 657.