## BARTELS v. STATE OF IOWA.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

## BOHNING v. STATE OF OHIO.
## POHL v. STATE OF OHIO.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

## NEBRASKA DISTRICT OF EVANGELICAL LUTHERAN SYNOD OF MISSOURI, OHIO, AND OTHER STATES, ET AL. v. McKELVIE ET AL., ETC.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

Nos. 134, 181, 182, 440. Argued October 10, November 28, 1922, and February 23, 1923.—Decided June 4, 1923.

Decided upon the authority of *Meyer* v. *Nebraska, ante,* 390.
191 Ia. 1060; 102 Oh. St. 474; 187 N. W. 927, reversed.

ERROR, (1) to a judgment of the Supreme Court of Iowa, sustaining a conviction of a teacher for teaching German to pupils in a parochial school, below the eighth grade; (2) to like judgments of the Supreme Court of Ohio; (3) to a judgment of the Supreme Court of Nebraska reversing a decision of a trial court, and refusing an injunction, in a suit brought against state officials to prevent enforcement of a statute penalizing the teaching of foreign languages to young children in schools.

*Mr. Frank E. Farwell,* with whom *Mr. Charles E. Pickett, Mr. Benjamin F. Swisher,* and *Mr. Fred B. Hagemann* were on the briefs, for plaintiff in error in No. 134.

*Mr. Bruce J. Flick,* for defendant in error in No. 134, submitted. *Mr. Ben J. Gibson,* Attorney General of the State of Iowa, was also on the brief.

Plaintiff in error cannot insist that the statute is unconstitutional because it might be construed so as to cause it to violate the Constitution. His right is limited solely to the inquiry whether in the case he presents the effect of applying the statute is to deprive him of his property without due process of law. *Davidson* v. *New Orleans,* 96 U. S. 97; *New York & North Eastern R. R. Co.* v. *Bristol,* 151 U. S. 566, 570.

The constitutionality of the statute cannot be assailed without showing that the party questioning it has been deprived of property or liberty in some arbitrary way; because some other person might be thus affected, he is not authorized to ask the court to invalidate a law on questions of constitutionality which do not directly affect him.

The constitutionality of acts like the one in question has been upheld in: *Nebraska District Evangelical Synod* v. *McKelvie,* 104 Neb. 93; *Pohl* v. *State,* 102 Oh. St. 474; *State* v. *Bartels,* 191 Ia. 1074; *Castello* v. *McConnico,* 168 U. S. 680; *Tyler* v. *Judges,* 179 U. S. 410; *Strouse* v. *Foxworth,* 231 U. S. 162.

The language of the statute does not violate Art. I, § 3, of the state constitution prohibiting the free exercise of religion. The defendant is not being prosecuted for giving religious instruction in a foreign language. *Commonwealth* v. *Herr,* 229 Pa. St. 132.

When the law operates equally upon all, when the rule of conduct is, uniform throughout the State, presumption lying at the foundation of representative government is that the legislator will act wisely and in the interest of all of the people. Such legislation is not open to the objection that it is class legislation. *Viermaster* v. *White,* 179 N. Y. 235; *Patsone* v. *Pennsylvania,* 232 U. S. 138; *Northwestern Laundry* v. *Des Moines,* 239 U. S. 486; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61; *Booth* v. *Illinois,* 184 U. S. 425; *Adams* v. *Milwaukee,* 228 U. S.

572; *State* v. *Fairmont-Creamery Co.,* 153 Ia. 702; *Bopp* v. *Clark,* 165 Ia. 697; *Hunter* v. *Coal Co.,* 175 Ia. 245.

In determining the reasonableness of a police regula-tion, the legislature is at liberty to act with reference to established usages, customs, and conditions of the people and with a view to the promotion of their comfort and the preservation of the public peace and good order. *Plessy* v. *Ferguson,* 163 U. S. 550; *Atlantic Coast Line R. R. Co.* v. *Goldsboro,* 232 U. S. 556, 559.

It will be presumed that the legislature in passing this statute was familiar with existing conditions, and that no general laws are ever passed either through want of information on the part of the legislature or because it was misled. *Laurel Hill Cemetery* v. *San Francisco,* 216 U. S. 358, 363.

Courts do not sit in judgment upon the wisdom of legislative enactments.

*Mr. Timothy S. Hogan* and *Mr. Frank Davis, Jr.,* for plaintiffs in error in Nos. 181 and 182.

*Mr. E. J. Thobaben,* with whom *Mr. Edward C. Stanton* was on the brief, for defendant in error in Nos. 181 and 182.

The legislature has the right, more than that, the duty, of providing adequate means of education of the young. It surely has the right to prescribe the course of study which shall be taught. In § 7648 of the Code of Ohio, the legislature has named the subjects which shall be taught in and which shall constitute a school an elementary school. Having defined what shall be taught, and clearly having the right to so define, has not the legislature a correlative right to say what shall not be taught, and the language in which the teachings shall be conducted?

Experience has shown that it is not wise to keep a young child or one that would be a student in the ele-

mentary branches in attendance on school more than forty weeks out of fifty-two.  It has also demonstrated that it requires at least thirty weeks in any one year to impart the knowledge necessary in certain essential studies.  The legislature of Ohio has therefore enacted laws fixing the maximum and minimum length of attendance in elementary schools in any year, and prior to the enactment of the legislation complained of herein had attempted only to say what branches of knowledge should be taught.

Sections 7762–1 and 7762–2 of the General Code are elements of the compulsory educational law, and by their natural effect operate to prohibit spending any of the time deemed essential to acquiring knowledge in the branches which are affirmatively prescribed by teaching a language not deemed essential to good intelligent citizenship in the State of Ohio.

Section 7762–2 applies this same rule to private, institutional and parochial schools.  It is as essential that pupils in these schools should receive standard educational facilities as those who attend the public schools.  The objective, intelligent citizenship, is the same, and it cannot be said that, because a child attends a private school or a parochial school, the standard of its educational requirement should be any less than is required of a pupil in the public schools.

The only remaining question is that § 7762–2 provides that the teaching shall be conducted in the English language only.  We think that this is clearly within the right of a legislature in an English speaking country; to say otherwise would create conditions chaotic in the extreme, with results that are unthinkable.

Much is said about personal rights, liberty, equality, privilege, due process of law, poison virus, etc.  These questions are not involved in the law complained of.  The

first duty of society to itself is to see to it that the elements which compose society have the essentials of good citizenship. This is paramount to any whim or notion that any person or set of persons may have. No religious liberties are interfered with by the act in question. If a parent wishes his child taught Martin Luther's dogma in Martin Luther's language, there is no law against the child being taught that language, unless it takes so much of the child's time and health as to endanger society in that regard, nor does the act complained of interfere with any substantial right under the Constitution. It does not interfere with religious liberty, nor does it abridge any privilege or immunity, nor deprive any person of life, liberty or property, nor does it deny to any person equal protection of the laws. It is a reasonable regulation, having for its objective the highest purpose of government, the upbuilding of an intelligent citizenship, or as said by Chief Justice Fuller in *Giozza* v. *Tiernan*, 148 U. S. 657–662, it tends to promote " their health, morals, education and good order."

It certainly is within the province of the legislature to enact laws protective of patriotism and the war power of the country.

*Mr. Arthur F. Mullen* and *Mr. C. E. Sandall,* with whom *Mr. I. L. Albert* was on the briefs, for plaintiffs in error in No. 440.

*Mr. Mason Wheeler* and *Mr. O. S. Spillman,* with whom *Mr. Clarence A. Davis,* Attorney General of the State of Nebraska, *Mr. Charles S. Reed, Mr. Guy C. Chambers* and *Mr. Hugh La Master* were on the brief, for defendants in error in No. 440.

*Mr. William D. Guthrie* and *Mr. Bernard Hershkopf,* by leave of court, filed a brief as *amici curiæ.*

Mr. Justice McReynolds delivered the opinion of the Court.

The several judgments entered in these causes by the Supreme Courts of Iowa, Ohio and Nebraska, respectively, must be reversed upon authority of *Meyer* v. *Nebraska,* decided today, *ante,* 390.

Number 134. Plaintiff in error was convicted of teaching pupils in a parochial school below the eighth grade to read German contrary to "An act requiring the use of the English language as the medium of instruction in all secular subjects in all schools within the State of Iowa," approved April 10, 1919.[1] He used English for teaching the common school branches, but taught young pupils to read German. The Supreme Court of the State held: " The manifest design of this language statute is to supplement the compulsory education law by requiring that the branches enumerated to be taught shall be taught in the English language, and in no other. The evident purpose is that no other language shall be taught in any school, public or private, during the tender years of youth, that is, below the eighth grade." 191 Iowa, 1060.

Numbers 181 and 182. Bohning and Pohl, of St. Johns Evangelical Congregational School, Garfield Heights, Cuyahoga County, Ohio, were severally convicted (102

---

[1] Section 1. That the medium of instruction in all secular subjects taught in all of the schools, public and private, within the State of Iowa, shall be the English language, and the use of any language other than English in secular subjects in said schools is hereby prohibited, provided, however, that nothing herein shall prohibit the teaching and studying of foreign languages as such as a part of the regular school course in any such school, in all courses above the eighth grade.

Section 2. That any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than twenty-five dollars ($25.00) nor more than one hundred dollars ($100.00). [Laws 1919, c. 198.]

Ohio St. 474) of violating "An act to supplement section 7762 of the General Code . . . and to repeal section 7729, concerning elementary, private and parochial schools and providing that instruction shall be in the English language," (108 Ohio Laws 614) approved June 5, 1919,[2] which prohibits the teaching of German to pupils below the eighth grade.

Number 440. An injunction is sought against the Governor and Attorney General of the State and the Attorney for Platte County to prevent enforcement of "An act to declare the English language the official language of this State, and to require all official proceedings, records and publications to be in such language and all school branches to be taught in said language in public, private, denominational and parochial schools," etc., approved April 14,

---

[2] Section 7762–1. That all subjects and branches taught in the elementary schools of the State of Ohio below the eighth grade shall be taught in the English language only. The board of education, trustees, directors and such other officers as may be in control, shall cause to be taught in the elementary schools all the branches named in section 7648 of the General Code. Provided, that the German language shall not be taught below the eighth grade in any of the elementary schools of this state.

Section 7762–2. All private and parochial schools and all schools maintained in connection with benevolent and correctional institutions within this state which instruct pupils who have not completed a course of study equivalent to that prescribed for the first seven grades of the elementary schools of this state, shall be taught in the English language only, and the person or persons, trustees or officers in control shall cause to be taught in them such branches of learning as prescribed in section 7648 of the General Code or such as the advancement of pupils may require, and the persons or officers in control direct; provided that the German language shall not be taught below the eighth grade in any such schools within this state.

Section 7762–3. Any person or persons violating the provisions of this act shall be guilty of a misdemeanor and shall be fined in any sum not less than twenty-five dollars nor more than one hundred dollars, and each separate day in which such act shall be violated shall constitute a separate offense. . . .

1921.[3]  This statute is subject to the same objections as those offered to the Act of 1919 and sustained in *Meyer* v. *Nebraska, supra.*  The purpose of the later enactment, as stated by counsel for the State, is " to place beyond the possibility for legal evasion a prohibition against the teaching in schools of foreign languages to children who have not passed the eighth grade."  The Supreme Court considered the merits of the cause, upheld the statute, and refused an injunction.   187 N. W. 927.

McKelvie and Davis, formerly Governor and Attorney General, no longer occupy those offices.  The cause is dismissed as to them.  Otto F. Walter is now the County Attorney and the judgment below as to him must be reversed.

*Reversed.*

---

[3] Sec. 1. The English language is hereby declared to be the official language of this State, and all official proceedings, records and publications shall be in such language, and the common school branches shall be taught in said language in public, private, denominational and parochial schools.

Sec. 2. No person, individually or as a teacher, shall, in any private, denominational, or parochial or public school, teach any subject to any person in any language other than the English language.

Sec. 3. Languages other than the English language may be taught as languages only after a pupil shall have attained and successfully passed the eighth grade as evidenced by a certificate of graduation issued by the county superintendent of the county or the city superintendent of the city in which the child resides.  Provided, that the provisions of this act shall not apply to schools held on Sunday or on some other day of the week which those having the care and custody of the pupils attending same conscientiously observe as the Sabbath, where the object and purpose of such schools is the giving of religious instruction, but shall apply to all other schools and to schools held at all other times.  Provided that nothing in this act shall prohibit any person from teaching his own children in his own home any foreign language. . . .

Sec. 7. Chapter 249, of the Session Laws of Nebraska for 1919, entitled, ' An Act relating to the teaching of foreign languages in the State of Nebraska,' is hereby repealed. . . .  [Laws 1921, c. 61.]

Mr. Justice Holmes, dissenting.

We all agree, I take it, that it is desirable that all the citizens of the United States should speak a common tongue, and therefore that the end aimed at by the statute is a lawful and proper one. The only question is whether the means adopted deprive teachers of the liberty secured to them by the Fourteenth Amendment. It is with hesitation and unwillingness that I differ from my brethren with regard to a law like this but I cannot bring my mind to believe that in some circumstances, and circumstances existing it is said in Nebraska, the statute might not be regarded as a reasonable or even necessary method of reaching the desired result. The part of the act with which we are concerned deals with the teaching of young children. Youth is the time when familiarity with a language is established and if there are sections in the State where a child would hear only Polish or French or German spoken at home I am not prepared to say that it is unreasonable to provide that in his early years he shall hear and speak only English at school. But if it is reasonable it is not an undue restriction of the liberty either of teacher or scholar. No one would doubt that a teacher might be forbidden to teach many things, and the only criterion of his liberty under the Constitution that I can think of is " whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat." *Purity Extract & Tonic Co.* v. *Lynch,* 226 U. S. 192, 204. *Hebe Co.* v. *Shaw,* 248 U. S. 297, 303. *Jacob Ruppert* v. *Caffey,* 251 U. S. 264. I think I appreciate the objection to the law but it appears to me to present a question upon which men reasonably might differ and therefore I am unable to say that the Constitution of the United States prevents the experiment being tried.

I agree with the Court as to the special proviso against the German language contained in the statute dealt with in *Bohning* v. *Ohio.*

Mr. Justice Sutherland concurs in this opinion.