**FARRINGTON, Territorial Governor, et al. v. T. TOKUSHIGE et al.**

(Circuit Court of Appeals, Ninth Circuit. March 22, 1926.)

No. 4667.

**1. Injunction ☞85(2).**

If statute regulating foreign language schools is unconstitutional, suit to enjoin its enforcement may be maintained by persons conducting such schools.

**2. Constitutional law ☞85 — Constitutional right of pupils to acquire knowledge of foreign language and right of others to teach it is beyond question (Rev. Laws Hawaii 1925, §§ 390–399).**

Constitutional right of Hawaiian pupils, affected by Foreign Language School Act of Hawaii to acquire knowledge of Japanese language, and right of others to teach it, is beyond question.

**3. Constitutional law ☞206(1), 255, 278(1) — Statute of Hawaii regulating teaching of foreign language in private schools held to abridge privileges and immunities of citizens, and to deprive them of liberty and property without due process of law (Rev. Laws Hawaii 1925, §§ 390–399).**

Foreign Language School Act of Hawaii, regulating private foreign language schools attended by children compelled to attend public schools by comprehensive regulations as to qualifications of teachers, text-books, limiting school session to one hour per day, and numerous other provisions, *held* to abridge privileges and immunities of citizens of United States, and to deprive them of liberty and property without due process of law, and not a proper exercise of police power.

**4. Evidence ☞14.**

It is common knowledge that Japanese do not readily assimilate with other races, and especially with white race.

McCamant, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Territory of Hawaii; J. T. De Bolt, Judge.

Suit by T. Tokushige and others against Wallace R. Farrington, Governor of the Territory of Hawaii, and others. Decree for plaintiffs, and defendants appeal. Affirmed.

William B. Lymer, Atty. Gen., of Hawaii, and Frear, Prosser, Anderson & Marx and W. F. Frear, all of Honolulu, Hawaii, for appellants.

Lightfoot & Lightfoot, J. Lightfoot, and J. B. Poindexter, all of Honolulu, Hawaii, for appellees.

Before GILBERT, RUDKIN, and Mc-CAMANT, Circuit Judges.

RUDKIN, Circuit Judge. The present appeal involves the validity of the Foreign Language School Act of the territory of Hawaii. Rev. Laws Hawaii 1925, §§ 390–399. The act in question defines the term "foreign language school" as any school conducted in any language other than the English or Hawaiian language, except Sabbath schools, and its more prominent and questionable features are the following:

No such school shall be conducted in the territory, unless under a written permit therefor from the department of public instruction, nor unless the fee therefor shall have been paid as therein provided, and such permit shall be kept exposed in a prominent place at the school, so as to be readily seen and read by visitors thereat. The fee prescribed is $1 per pupil on the estimated average attendance of pupils at the school during the period during which such school was conducted during the next preceding school year, or, if such school was not conducted during any part of such preceding school year, then at the same rate at the estimated average attendance during the school year or unexpired part thereof in question, in which latter case the amount shall be adjusted to conform to the estimated average attendance during such year or part thereof. The amount of the fee shall be estimated and determined by the department from such information as it may have, and shall be payable by any person, persons, or corporation conducting or participating in conducting such school, and all officers, teachers, and all members of any committee or governing board of any such school, and in case such school is conducted by or for a corporation or voluntary association, or other group of persons, all members or associates of such corporation, association, or group shall be deemed to be participants in conducting such school. Provision is then made for the collection of the fees by suit, but that provision is not deemed material here.

All permits must be renewed annually on the 1st day of September of each year, and a similar fee must be paid, provided the department shall not be required to renew a permit for conducting any foreign language school, in the conducting of which there has been a violation of the terms of the act. All fees collected by the department under the act shall be paid over to the treasurer of the territory, and the moneys so paid are appropriated to the department, to be expended in enforcing and carrying out its provisions. If at any time the funds at the disposal of the department from fees previously collected or from royalties, commissions, or other moneys received in connection with the publication or sale of foreign language school text-books shall make it possible to fully and effectively carry out the provisions of the act with the permit fees payable by the schools based on a lower rate than $1 per pupil, the department is authorized to make such a reduction in that rate as it may deem reasonable and expedient. Every person conducting a foreign language school shall, not later than June 15 of each year, file with the department, on forms prescribed or furnished by it, a sworn list of all pupils in attendance at such school during the current school year, showing the name, sex, parents or guardians, place of birth, and residence of each child.

No person shall teach in a foreign language school unless and until he shall have first applied to and obtained a permit so to do from the department, and this shall also be construed to include persons exercising or performing administrative powers at any school. No permit to teach in a foreign language school shall be granted unless and until the department is satisfied that the applicant for the same is possessed of the ideals of democracy, knowledge of American history and institutions, and knows how to read, write, and speak the English language. It is the declared object of the act to fully and effectively regulate the conducting of foreign language schools and the teaching of foreign languages, in order that the Americanism of the pupils may be promoted and the department is directed to carry out the provisions of the act in accordance with its spirit and purpose. Before issuing a permit to conduct a foreign language school or to teach in any such school the department shall require the applicant for such permit to sign a pledge that the applicant will, if granted a permit to teach in such a school, abide by and observe the terms of the act, and the regulations and orders of the department, and will, to the best of his ability, so direct the minds and studies of pupils in such schools as will tend to make them good and loyal American citizens, and will not

permit such students to receive instructions in any way inconsistent therewith.

No foreign language school shall be conducted in the morning before the school hours of the public schools, or during the hours while the public schools are in session, nor shall any pupil attend any foreign language school for more than one hour each day, nor exceeding six hours in any one week, nor exceeding thirty-eight weeks in any school year: Provided, however, the department may, in its discretion and with the approval of the governor, modify this provision. The department shall have full power from time to time to prescribe by regulations the subjects and courses of study of all foreign language schools, and the entrance and attendance prerequisites or qualifications of education, age, school attainment, demonstrated mental capacity, health and otherwise, and the text-books used in any foreign language school. Until otherwise provided by the department, the following regulations are in effect:

Up to September 1, 1923, every pupil shall have first satisfactorily completed the American public school first grade, or a course equivalent thereto, before attending or being allowed to attend any foreign language school. Beginning September 1, 1923, and thereafter, every pupil shall have satisfactorily completed the American public school first and second grades, or courses equivalent thereto, before attending or being allowed to attend any foreign language school. Beginning September 1, 1923, and thereafter, for grades 1, 2, and 3, and beginning September 1, 1924, and thereafter, for grades 4 and above, all new text-books used in elementary foreign language schools shall be based upon the principle that the pupil's normal medium of expression is English, and shall contain, as far as practicable, English equivalents for foreign words and idioms. The department is authorized to prepare, or cause to be prepared, or procure or arrange for procuring, suitable text-books for the teaching of foreign languages in the foreign language schools, and to enter into an agreement or agreements for the publishing and sale of the same. All royalties, commissions, and moneys received by or on behalf of the department in connection with the publication or sale of such text-books shall be paid over to the treasurer of the territory, and shall be appropriated to the department to be expended for the purposes of the act.

In every foreign language school no subjects of study shall be taught, nor courses of study followed, nor entrance nor attendance qualifications required, nor text-books used, other than as prescribed or permitted by the department. The latter regulations were only effective until superseded in whole or in part by others made by the department, and some such were thereafter made, but they are not deemed material to our present inquiry. The department has power to appoint one or more inspectors of foreign language schools and to pay the salary and necessary expenses therefor; such inspectors and other duly authorized agents of the department shall have the right freely to visit such foreign language schools and to inspect the buildings, equipment, records, and teaching thereof, and the text-books used therein. If the department shall at any time become satisfied that any holder of a permit to conduct a foreign language school or to teach therein does not possess the qualifications required by the act, or shall have violated or failed to observe any of the provisions of the act, or of the regulations or orders of the department, the department may then and thereupon revoke the permit theretofore granted, and the same shall thereupon be and become null and void.

Any person who shall conduct or participate in conducting a foreign language school, or who shall teach in a foreign language school, contrary to the provisions of the act, or who shall violate or participate in violating any of the provisions thereof, or any of the regulations or orders of the department, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not to exceed $25, and each day's violation shall be deemed a separate offense. The act further provides that, if any section or part thereof is declared unconstitutional or invalid by the courts, the same shall not affect the validity of the act as a whole, or any part thereof which can be given effect without the part so decided to be unconstitutional or invalid.

There are 163 foreign language schools in the territory affected by the act. Nine of these are conducted in the Korean language, seven in the Chinese language, and the remainder in the Japanese language. The plaintiffs are members of numerous voluntary unincorporated associations conducting foreign language schools on behalf of the Japanese. The total number of such schools is 146, the schools are owned and conducted by upwards of 5,000 persons, the property holdings aggregate $250,000, the number of pupils enrolled is 20,000, and the number of teachers employed is 300. The defendants are the Governor of the territory, the Attor-

ney General of the territory, and the superintendent of public instruction of the territory.

After a hearing the court below granted a temporary injunction restraining the defendants, their deputies, assistants, subordinates, and each and every of them, until the further order of the court, from requiring the plaintiffs, their agents, servants, or teachers, to secure permits to conduct foreign language schools as required by the act, or any permit whatever; from requiring the plaintiffs, their agents, servants, or teachers, to pay the fees required by law, or to pay any fee whatsoever, for conducting foreign language schools; from requiring the plaintiffs, their agents, servants, or teachers, to make the reports required of them; from requiring the plaintiffs, their agents, servants, or teachers, to give the pledges referred to in the act, or any pledge whatever, affecting their duties in reference to foreign language schools; from requiring the plaintiffs, their agents, servants, or teachers, to conform to any regulation or regulations prescribed by the department of public instruction relating to the subjects and courses of study, and the qualifications of education, age, school attainment, demonstrated mental capacity, and otherwise, of the pupils attending such foreign language schools; and from requiring plaintiffs, their agents, servants, or teachers, to use the text-books prescribed by the department.

The defendants were further enjoined and restrained, until the further order of the court, from in any manner enforcing against the plaintiffs, their agents, servants, or teachers, the pains, penalties, and forfeitures provided in the act, or from in any manner arresting or causing to be arrested, in civil or criminal proceedings, the plaintiffs, their agents, servants, or teachers, on account of any alleged violation by them, or either of them, of the terms or provisions of the act, and from in any manner interfering with the property, business, and affairs of the plaintiffs, for or on account of any such violation. [1, 2] The appeal now before this court is from that decree. If the legislation complained of is unconstitutional, the right of the appellees to maintain this suit is, in our opinion, not open to question. Pierce v. Society of Sisters, 45 S. Ct. 571, 268 U. S. 510, 69 L. Ed. 1070, 39 A. L. R. 468. The right of the pupils, against whom the legislation is directed, to acquire a knowledge of the Japanese language, and the right of others to teach them that language, is equally beyond question. Meyer v. Nebraska, 43 S. Ct. 625, 262 U. S. 390, 67 L. Ed. 1042, 29 A. L.

R. 1446; Bartels v. Iowa, 43 S. Ct. 628, 262 U. S. 404, 67 L. Ed. 1047.

[3] It only remains to consider, then, whether the legislation can be upheld and sustained as a proper exercise of the police power of the territory, and in that connection we must remember that we are not now concerned with the public school system established by the territory and maintained at public expense. These foreign language schools are in no sense a part of that system, as they are maintained through private enterprise, and attendance upon them is not compulsory. The children who attend them are compelled to and do attend the public schools and fully discharge all their duties and obligations in that regard, and when they have done this we take it for granted that they have an undoubted right to acquire a knowledge of foreign languages, music, painting, drawing, and such other accomplishments, not inimical to good order and good morals, as their parents or guardians see fit to bestow upon them.

In Berea College v. Kentucky, 29 S. Ct. 33, 211 U. S. 45, 53 L. Ed. 81, a majority of the court held that a state might withhold from its corporations privileges and immunities which it could not constitutionally withhold from individuals, and affirmed the judgment of the Supreme Court of the state. In a dissenting opinion, conflicting in no wise with the opinion of the majority, Mr. Justice Harlan said:

"The capacity to impart instruction to others is given by the Almighty for beneficent purposes and its use may not be forbidden or interfered with by government—certainly not, unless such instruction is, in its nature, harmful to the public morals or imperils the public safety. The right to impart instruction, harmless in itself or beneficial to those who receive it, is a substantial right of property, especially, where the services are rendered for compensation. But, even if such right be not strictly a property right, it is, beyond question, part of one's liberty as guaranteed against hostile state action by the Constitution of the United States. This court has more than once said that the liberty guaranteed by the Fourteenth Amendment embraces 'the right of the citizen to be free in the enjoyment of all his faculties,' and 'to be free to use them in all lawful ways.' * * * If pupils, of whatever race—certainly, if they be citizens—choose with the consent of their parents or voluntarily to sit together in a private institution of learning while receiving instruction which is not in its nature harmful or dangerous to the

public, no government, whether federal or state, can legally forbid their coming together, or being together temporarily for such an innocent purpose."

Comprehensive and all-pervading as the police power is, there are certain rights and certain relations beyond its scope. One of these is the right of a parent to educate his own child in his own way, at least beyond the requirements of the local law. Conceding, then, as we must, that the appellees have a right to maintain these foreign language schools, that teachers have a right to teach therein, and that pupils have a right to be taught, how can these comprehensive regulations and prohibitions be sustained. Before obtaining a permit to teach, the applicant must satisfy a territorial officer that he is possessed of the ideals of democracy, a knowledge of American history and institutions, and knows how to read, write, and speak the English language. A knowledge of the foreign language is not a prerequisite. He must pledge himself to abide by and observe the terms of the act and such regulations and orders as the department may see fit to make, and he and his pupils must use only such text-books as are compiled and sold by legislative authority. He must so direct the minds and studies of his pupils as will tend to make them good and loyal American citizens, and this he must accomplish after the pupil has completed the second grade in the common schools, and within one brief hour each day, for not exceeding six days a week and thirty-eight weeks in the year. In other words, in a school conducted primarily for the teaching of a foreign language, the pupils must take a course in Americanism—a course not required of any other class of citizens or students. We feel quite safe in saying that, if such a system of regulations were enforced by one of our American commonwealths against an American college in which foreign languages are taught, it would shock the conscience of mankind.

[4] An attempt is made to justify the act, however, because of the peculiar conditions prevalent on the Islands. They have a large Japanese population there, and it is said that within the next 15 years a majority of the electorate will be American citizens of Japanese extraction. It is further said that the Japanese do not readily assimilate with other races; that they still adhere to their own ideals and customs, and are still loyal to their emperor. It is a matter of common knowledge that the Japanese do not readily assimilate with other races, and especially with the white race. This is in part a matter of choice and in part a matter of necessity, because one cannot assimilate alone. No doubt the Japanese tongue will be spoken on the Islands for generations yet to come, and no doubt the Japanese will be slow to give up their customs and their ideals; but we took the Islands cum onere and extended the Constitution of the United States there, and every American citizen has a right to invoke its protection. You cannot make good citizens by oppression, or by a denial of constitutional rights, and we find no such conditions there as will justify a departure from the fundamental principles of constitutional law. If the power to so legislate is once conceded, the time and manner of its exercise is largely a matter of legislative discretion, over which the courts have little or no control.

An attempt was made to justify the foreign language school laws of Nebraska, Iowa, and Ohio on similar grounds, but the attempt was unsuccessful. "It is said the purpose of the legislation was to promote civic development, by inhibiting training and education of the immature in foreign tongues and ideals before they could learn English and acquire American ideals, and 'that the English language should be and become the mother tongue of all children reared in this state.' It is also affirmed that the foreign-born population is very large, that certain communities commonly use foreign words, follow foreign leaders, move in a foreign atmosphere, and that the children are thereby hindered from becoming citizens of the most useful type, and the public safety is imperiled.

That the state may do much, go very far, indeed, in order to improve the quality of its citizens, physically, mentally, and morally, is clear; but the individual has certain fundamental rights which must be respected. The protection of the Constitution extends to all; to those who speak other languages, as well as to those born with English on the tongue. Perhaps it would be highly advantageous if all had ready understanding of our ordinary speech, but this cannot be coerced by methods which conflict with the Constitution—a desirable end cannot be promoted by prohibited means." Meyer v. Nebraska, supra.

For these reasons, we are of opinion that the act in question, in both spirit and purpose, abridges the privileges and immunities of citizens of the United States, and deprives them of liberty and property without due process of law.

The decree is affirmed.

McCAMANT, Circuit Judge. I am unable to concur in the conclusion that the statute in question is wholly void. In my opinion the injunction should not go further than to restrain the defendants from interfering with the patronage of appellees' schools by any pupils desiring to attend them, and from requiring appellees to use only the text-books prescribed by the department of public instruction.