122 N.J. Super. 350 (1973)
300 A.2d 361
THE RIVER DELL EDUCATION ASSOCIATION AND ROBERT COTTO, PLAINTIFFS,
v.
THE RIVER DELL BOARD OF EDUCATION, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 18, 1973.
*351 Mr. Theodore M. Simon for plaintiffs River Dell Education Association and Robert Cotto (Messrs. Goldberg and Simon, attorneys, Mr. Simon on the brief).
Mr. James A. Major for defendant River Dell Board of Education (Messrs. Major and Major, attorneys; Mr. Major on the brief).
PASHMAN, A.J.S.C.
Plaintiff seeks to restrain defendant River Dell Board of Education (hereinafter "board") from implementing a policy designed to curtail certain discussions between students and teachers.
Defendant board is responsible for two schools, one junior high school and one senior high school, in a regional district comprised geographically of River Edge and Oradell. Plaintiff River Dell Education Association (hereinafter "association") is the collective bargaining agent representing teachers employed by defendant board. In November 1972 negotiations were undertaken between the association and the Board to produce a collective bargaining agreement for the academic year 1973-74.
*352 In an effort to prevent disruption of school routine and procedures by prolonged discussion of the negotiations between students and teachers, the board, through the superintendent of schools, proposed to the association's president, plaintiff Cotto, a new policy prohibiting teachers from answering students' questions regarding the negotiations. The proposal was rejected by Cotto, after which a memo was sent to the faculty by the superintendent describing the situations in which such discussions are to be avoided and stating that the memo is to be accepted as "policy" of the board, to be added to the Staff Manual (1972-73). The memo follows:
 Memo to: Faculty
 From: Richard A. Veit
 Re: Negotiations
 Date: November 21, 1972
There are times during the heat of negotiations between teacher associations and boards of education when students become very interested and concerned. Naturally, youngsters ask questions in the classroom, hallways, and during extra-curricular activities. Should you be placed in this somewhat precarious position, please inform the inquisitive youngsters that negotiations between a Board and professional teachers' association are not to be discussed for obvious reasons.
Please accept this as policy of the River Dell Regional Board of Education and add the above paragraph to page 25 of the Staff Manual (1972-73) as item # 8, under COMMUNICATIONS.
RAV:dm
The complaint asserts that the association was advised that any breach of the new policy, to be determined by the board, would be considered insubordination, with possible discharge, removal of tenure, or withholding of increments as possible penalties.
The complaint seeks a declaratory judgment as to that policy and an injunction against its enforcement.
Before we reach the merits of this case, a threshold question has been raised by defendant board, namely, the issue of exhaustion of administrative remedies. The board asserts that jurisdiction over the question of the validity of the policy in question should be lodged in the Commissioner *353 of Education, pursuant to N.J.S.A. 18A:6-9, which provides as follows:
The commissioner shall have jurisdiction to hear and determine, without cost to the parties, all controversies and disputes arising under the school laws, excepting those governing higher education, or under the rules of the state board or of the commissioner.
Whether this case falls within the category of disputes arising under the school laws need not be decided at this point, since I do not feel that this is a case warranting the implementation of the doctrine of exhaustion of administrative remedies. In Matawan v. Monmouth County Board of Taxation, 51 N.J. 291 (1968), our Supreme Court noted that the exhaustion doctrine is applicable only where the expertise of the administrative agency would be necessary or advantageous. In that case the only question was one of law; the court ruled that since no issue of fact was involved, it would not avail the complainant to pursue his remedies before an administrative agency. The courts are uniquely suited to determine constitutional issues, especially where, as in the present case, there is no necessity to engage in fact-finding, for which the agency is at least as well-suited. Since we are faced with what is in essence a pure constitutional issue, I see no need to remand this case to any administrative agency.
Plaintiff association argues that the board's policy is a prior restraint on freedom of discussion in an academic environment. The right to be free of such restraint finds support in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Plaintiff argues that the imposition of a prior restraint on expression places a burden on the party imposing the restraint to overcome the heavy presumption against its constitutionality. Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972).
In Tinker, the United States Supreme Court held that freedom of expression of views, however controversial, is *354 not to be curtailed in a school without a showing that a substantial disruption of school activities would otherwise result. Mr. Justice Fortas for the court stated:
First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. This has been the unmistakable holding of this court for almost 50 years * * *. [393 U.S. at 506, 89 S.Ct. at 736; citations omitted]
Thus, while the case dealt with the right of students to wear armbands protesting the Vietnam War, the court made it clear at the outset that its remarks concerned the rights of teachers as well as of students. The court continued:
In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that engaging in the forbidden conduct would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school," the prohibition cannot be sustained. Burnside v. Byars, supra, 5 Cir. 363 F.2d 744 at 749. [393 U.S. at 509, 89 S.Ct. at 738]
I do not find that the defendant board has met its heavy burden of proof that the prohibitive policy in question was justified in the light of Tinker and of Healy v. James, supra, which holds that any prior restraint on freedom of expression can only be justified by overcoming a heavy presumption against its constitutionality.
In addition to these strong statements which can be read to support a teacher's right to express his views on controversial issues, the case of Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), directly upheld this right, although in a context slightly different from the case at bar. Pickering was a high school teacher who was dismissed from his position for writing a *355 letter to a local newspaper opposing a local bond issue and criticizing the board for the way in which it handled past proposals to raise new school revenue. Mr. Justice Marshall for the Supreme Court held that the dismissal was improper. The court noted that mere statements by a teacher regarding controversial issues do not constitute a disruption of school routine sufficient to justify curtailment of such statements by the school board.
What we do have before us is a case in which a teacher has made erroneous public statements upon issues then currently the subject of public attention, which are critical of his ultimate employer but which are neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally. In these circumstances we conclude that the interest of the school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public. [391 U.S. at 572-573, 88 S.Ct. at 1737]
The court summed up its philosophy thus:
* * * we hold that, in a case such as this, absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment * * *. [391 U.S. at 574, 88 S.Ct. at 1738]
While the statements in Pickering were not made in the classroom or otherwise in the school building itself, the case nevertheless gives compelling support for the position that a teacher's statements, wherever made, are to be given no less opportunity for issuance than those of any other citizen.
Defendant board cites three cases which, it argues, are dispositive of the case at bar: Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972); Central Hardware Co. v. NLRB, 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972), and State v. Smith, 46 N.J. 510 (1966).
*356 Lloyd involved the right of a shopping center to prohibit the distribution of handbills on its premises. The court held that such a prohibition did not violate First Amendment rights. Central Hardware held that a retailer's parking lots being open to the public did not bring a union's right to solicit support therein within the protection of the First Amendment. Smith held that the First Amendment was not a bar to curtailing disorderly conduct at a public meeting.
These three cases have no bearing on the case at bar. They do not deal with an academic environment and say nothing about the rights of teachers and students to discuss controversial issues. It is clear that an academic setting is entirely different from the context of a retail store's parking lot or the grounds of a shopping center. The court has repeatedly indicated that First Amendment rights in the academic context are jealously protected. See Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Bartels v. Iowa, 262 U.S. 404, 43 S.Ct. 628, 67 L.Ed. 1047 (1923); Pierce v. Society Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Sweezy v. New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). All of these cases were cited by Mr. Justice Fortas in Tinker v. Des Moines, supra, 393 U.S. at 506-507, 89 S.Ct. at 736, to support the statement that it has been the unmistakable policy of the Supreme Court for the past 50 years to uphold First Amendment rights of students and teachers in an academic context.
*357 In view of the foregoing, I feel that the policy propounded by defendant board is not supportable in a constitutional sense. There has been no showing by the board that the conduct sought to be curtailed would "materially and substantially inferere with the requirements of appropriate discipline in the operation of the school." Tinker, supra, 393 U.S. at 509, 89 S.Ct. at 738. Indeed, it can be argued that the subject of the current negotiations is appropriate for questions by students and answers by teachers in the school setting, since the relationship between the teachers and the school board may have a direct effect on students themselves.
The recent case of James v. Board of Education, 461 F.2d 566 (2 Cir.1972), is directly on point. The court held that it was unconstitutional for school authorities to discharge a teacher because he wore a black armband in class to protest the Vietnam War. Without proof of disruption, the court held that a policy of prohibition of such conduct was not justifiable. Indeed, the court stated, it is appropriate for such conduct to take place in the classroom, since it is foolhardy to attempt to shield high school students who are about to enter the political arena as voters from political controversy.
This case does not relate to regulation of clothing or hair style or deportment. This is a First Amendment question at a time when youth is eager and inquisitive, unaccompanied by any disturbance or disorder.
Openness is not to be condemned. Questions posed by students and answers thereto are not the same as prolonged discussions of the negotiations. If the memo prohibited debate and extended discussion of negotiations, the argument for disruption would be more substantial. It is not desirable for a teacher to use his classroom as a soapbox.
And the directive speaks of questions both in the hallways and in the classroom. In what manner has school routine been substantially disrupted? Certainly, anything controversial may start a discussion. But apprehension of disturbance or controversy is no reason to bar freedom of speech. *358 Constitutional freedom is more important in the American school than anywhere. This is the market place for answers to questions for an intelligent understanding of all issues. Tinker v. Des Moines School District, supra. Our Constitution permits answers to controversial questions in the classroom. This form of expression cannot be denied.
The directive, dated November 21, 1972, to the faculty from the River Dell Board of Education is unconstitutional and unlawful. It is violative of Article 1, paragraph 6 of the 1947 New Jersey Constitution as well as the First Amendment of the United States Constitution as applied to states by virtue of the Fourteenth Amendment.