VILLANTI, Judge.
T.S. appeals the disposition order that withheld adjudication for one count of possession of marijuana and one count of possession of drug paraphernalia, contending that the trial court erred when it denied her dispositive motion to suppress. Because the State presented no evidence that the search of T.S.’s bookbag was justified at its inception, we reverse and remand for T.S.’s discharge.
T.S. was charged with possession of marijuana and possession of drug paraphernalia after a search of her bookbag by school officials turned up these items. T.S. moved to suppress this evidence, arguing that the search of her bookbag was not supported by reasonable suspicion. At the hearing on T.S.’s motion, the evidence showed that on the day in question T.S. arrived at school early with her mother for a meeting with Barbara Meshna, the school’s guidance counselor. At that time, T.S. had a bookbag with her. After the meeting, Meshna reminded T.S, that school rules prohibited students from carrying bookbags in the halls during the school day, and Meshna offered to allow T.S. to leave the bookbag in her office. Meshna testified that T.S. did so “without any issue at all.” At that time, T.S. had not violated any school rule, nor was she suspected of violating any law.
On four different occasions during the day, T.S. came to Meshna’s office asking to have access to her bookbag. Meshna testified that she did not notice anything out of the ordinary about T.S.’s attitude or demeanor when T.S. made these requests. Citing the school policy on bookbags, Meshna denied each of T.S.’s requests. Nevertheless, she became suspicious because of the number of times T.S. requested access to her bookbag. As Meshna explained, “I was thinking about how many times she came to try to retrieve her book bag, [and] I started wondering why it was so important to her.” So -without any consent or other information, Meshna initiated a search of T.S.’s bookbag, which revealed the marijuana and paraphernalia at issue in this case.
At the close of Meshna’s testimony, T.S. argued that the search of her bookbag was improper because school officials had no reasonable suspicion based on articulable facts that she was violating the law or school rules so as to justify the search. The trial court disagreed, finding that the fact that T.S. brought her bookbag to school despite school policies that discouraged bookbags subjected that bookbag to a *1291 search without any further suspicion. The trial court subsequently found T.S. guilty as charged and sentenced her accordingly. T.S. now seeks review of the trial court’s ruling denying her motion to suppress.
Searches of students by school officials are analyzed, like all searches, under the Fourth Amendment, but they have their own slightly modified standard of reasonable suspicion. To justify the search of a student by a school official, there must be “reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.” New Jersey v. T.L.O., 469 U.S. 325, 341-42, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). To establish reasonable grounds for a search, the State must “ ‘elicit specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant the intrusion.’” S.V.J. v. State, 891 So.2d 1221, 1223 (Fla. 2d DCA 2005) (quoting A.H. v. State, 846 So.2d 1215, 1216 (Fla. 5th DCA 2003)); see also A.N.H. v. State, 832 So.2d 170, 171 (Fla. 3d DCA 2002). “A ‘gut feeling’ or hunch that something is wrong does not constitute a reasonable suspicion to justify the search.” S.V.J., 891 So.2d at 1223.
For example, in A.S. v. State, 693 So.2d 1095, 1095 (Fla. 2d DCA 1997), the assistant principal saw A.S. and three other boys huddled in a group before school. One of the boys had money in his hand, and A.S. was “fiddling” in his pockets. The assistant principal found this activity suspicious, and she brought all the boys to her office and searched their belongings. The search uncovered marijuana in A.S.’s wallet. The trial court denied A.S.’s motion to suppress, but this court reversed. In doing so, we noted that “[t]he presence of money in the hand of one boy and [A.S.] ‘fiddling’ in his pocket is not enough to amount to reasonable suspicion,” in large part because the assistant principal did not see any contraband and did not see any money change hands. Id. at 1096.
Similarly, in A.N.H., a teacher contacted the school counselor because A.N.H. had bloodshot eyes, was not acting like himself, and the teacher believed that “something wasn’t right” with him. 832 So.2d at 171. The counselor searched A.N.H. and found marijuana in his pocket. Id. The trial court denied A.N.H.’s motion to suppress, but the Third District reversed. The court noted that A.N.H.’s bloodshot eyes and unusual behavior could have resulted “from a variety of non-criminal circumstances, including the appearance and behavior associated with a common cold.” Id. at 172. The court held that there were no reasonable grounds to suspect that A.N.H. was involved in any criminal activity and that the search was thus invalid. See also R.S.M. v. State, 911 So.2d 283, 284 (Fla. 2d DCA 2005) (holding that an assistant principal who was escorting R.S.M. to the office because he had skipped class and who noticed that R.S.M. was “reaching towards his pockets and then jerking his hands back” had nothing more than a hunch of illegal activity rather than the reasonable suspicion necessary to support the search of his pockets).
In contrast, in Safford Unified School District No. 1 v. Redding, 557 U.S. 364, 372, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009), a student handed the assistant principal a white pill and told him that he had gotten it from Marissa Glines. After determining that the pill was available only by prescription, the assistant principal called Glines out of class. Id. A search of Glines revealed additional pills. Id. When the assistant principal asked Glines where she got the pills, Glines indicated that Savana Redding had provided them to her, along with a day planner. Id. The *1292 assistant principal knew that Glines and Redding were Mends and knew that they had had alcohol and cigarettes at a school dance a few weeks earlier. Id. at 373. At that point, the assistant principal had Red-ding brought to his office. With Glines no longer present, he asked Redding whether the day planner was hers, and she said that it was but that she had given it to Glines. Id. at 373. The assistant principal then showed Redding the pills taken from Glines and asked if she knew anything about them. Id. at 368. After Redding denied any knowledge of them, the assistant principal searched her belongings, but no further pills were found. Id. The Supreme Court held that the totality of the assistant principal’s knowledge, including Glines’ statement that the pills came from Redding, was “sufficiently plausible to warrant suspicion that [Redding] was involved in pill distribution” and was “enough to justify a search of [Redding]’s backpack and outer clothing.” Id at 373.
Like the searches in AS., A.N.H., and R.S.M., the search in this case was based on nothing more than Meshna’s unsupported hunch that something wasn’t right. None of the facts known to Meshna when she initiated the search of T.S.’s bookbag establish reasonable grounds for suspecting that a search of that bag would turn up evidence of activity that violated either the law or school rules. T.S. clearly wanted something from her bookbag during the school day, but that something could have been any number of lawful items, such as change for a vending machine, feminine hygiene products, or a piece of gum. Meshna testified that she became suspicious about what might be in the bookbag because, in her opinion, T.S. seemed overly anxious to have it. However, unlike the facts in Redding, Meshna had no prior information that T.S. was involved in any type of illegal activity and no reasonable basis for suspecting that T.S. would have contraband either in her bookbag or on her person. Absent some evidence from which Meshna could draw a reasonable inference that T.S. had some type of contraband in her bookbag, T.S.’s interest in retrieving her bookbag, taken alone, is not a specific and articulable fact which reasonably warranted the search of the bookbag. Even taking into account the relaxed standard of reasonable suspicion applicable to searches of students by school officials, the search in this case, like the searches in AS., AN.H., and R.S.M., was improper, and the evidence resulting from the search should have been suppressed.
In this appeal, the State asserts that Meshna had sufficient reasonable suspicion because T.S. was violating school rules by wandering the halls with her bookbag. However, this argument is not supported by the record. The evidence at the hearing showed that T.S. carried her bookbag into a meeting with her mother and Mesh-na before school started. When the meeting ended, T.S. accompanied Meshna to her office and left the bookbag there. Thus, there was simply no evidence that T.S. was wandering the halls with her bookbag in violation of school rules on the date in question.
The State also asserts that the court could have considered T.S.’s prior disciplinary history when determining whether Meshna had a reasonable suspicion to search the bookbag. And while this would be a proper consideration for the court if such evidence had been presented, see State v. D.T.W., 425 So.2d 1383, 1387 (Fla. 1st DCA 1983), the State presented no evidence of T.S.’s prior disciplinary history at the evidentiary hearing. While Meshna did testify that T.S. had failed to follow some school rules in the past, Meshna did not relate those prior infractions to any of *1293 the conduct at issue in this case, and Meshna provided no evidence of any “disciplinary history” relating to these alleged infractions. T.S.’s alleged disciplinary history cannot support the search of her bo-okbag when no evidence of that history was presented to the trial court.
Because the State presented insufficient evidence to establish that Meshna had a reasonable suspicion that T.S.’s bookbag would contain contraband, the trial court should have granted T.S.’s motion to suppress. Hence, we reverse the disposition order and sentence and remand for T.S.’s discharge.
Reversed.
KELLY and MORRIS, JJ., Concur.