APPEL, Justice.
In this case, we consider whether a search of a high school student’s football equipment bag by a school official violated the constitutional limitations on searches and seizures under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. The district court found that the school official had reasonable grounds to search the bag. The court of appeals affirmed. We granted further review. For the reasons expressed below, we affirm.
I. Background Facts and Procedure.
On August 30, 2013, Mar’yo Lindsey Jr. was playing football for Dunkerton High School, Dunkerton, Iowa. The game was held in Riceville, Iowa. Lindsey brought his school-issued equipment bag with him to Riceville. Football players use their equipment bags to transport their gear to sporting events. Lindsey placed the equipment bag, which had his name marked on it, in the team’s locker room upon arrival at Riceville.
Unfortunately, Lindsey was badly injured during the game. • The Dunkerton school superintendent, James Stanton, called an ambulance to take Lindsey to the hospital. While paramedics were getting Lindsey ready for transport, Lindsey told Stanton to give his bag to a friend and to not let anybody else other than his friend have the bag or “mess .with it.” Lindsey repeated this admonition several times.
Stanton asked head football coach Jonathan Steffen to take the bag back to Dunk-erton. Steffen placed the bag on a table in the commons area of the Dunkerton lunchroom for the superintendent. Stanton then moved the bag, placing it on the floor, and heard a metallic sound. Stanton believed the sound was that of a firearm hitting the surface of the floor. At this point, he unzipped the bag, found a blue backpack inside it, opened that bag, and discovered a long-barreled handgun along with a bag which appeáred to contain marijuana, rolling papers, and other drug paraphernalia. The superintendent secured the bag and called law enforcement.
Lindsey was subsequently charged with possession of a firearm as a felon, carrying a weapon on school grounds, carrying a weapon, and possession of a controlled substance. Lindsey pled not guilty. Lindsey filed a motion to suppress the evidence found in the equipment bag. He claimed the search of his equipment bag violated his right to be free from unreasonable searches and seizures under the Iowa and United States Constitutions.
A hearing was held on the motion to suppress. At the hearing, Stanton testified about the evening of August 30. He stated that at the time of the injury, a number of people assembled on the field— the athletic directors from both Riceville and Dunkerton, the ambulance personnel from Riceville, and one of the game offi *414 cials. Lindsey was put in a cervical’ collar and placed on a backboard to prevent further injury. At that time, Lindsey said, “[P]lease make sure that Keota gets my bag. Don’t let anybody but Keota have my bag.” . Keota was a fellow student on the football team. Stanton further testified that the school had a policy in place and posted on the two main entry doors of the school building that all bags are subject to search. Stanton testified that he became suspicious when Lindsey stated that he did not want anyone else to take his bag.
Stanton instructed Steffen to make sure that Stanton got the bag when .they got back to Dunkerton. According to Stanton, when he arrived at Dunkerton, the bag was sitting on the table in the commons. Stanton testified that -he picked up the bag and set it on the floor. When he did so, there was a “very discernable loud clunk.” Stanton, testified that he had a lot of experience with firearms as a hunter and collector, and he owned one pistol. When the bag hit the ground and made the sound, Stanton testified he was “one hundred percent sure” when the bag hit the floor “[t]hat it was a gun.” Stanton* testified he was aware that prior to that date Lindsey had been suspended from school for possession of drug paraphernalia and that he had some weapons charges from activities not related to school. '
After Stanton heard the loud clunk, 'he opened the equipment bag. Inside the bag was a backpack. Inside that bag was some drug paraphernalia and the gun. Stanton inspected the gun... The gun was loaded.
Coach Steffen also testified at the suppression hearing. Steffen testified that when football players go to away games, each player has a big red equipment bag that is used to hold their shoulder pads, helmets, cleats, and other equipment, Steffen stated that when he attended to Lindsey on the field, “it seemed that it was going to be a pretty serious injury” and that Lindsey’s statement that he wanted “a certain kid” to get the bag and that “nobody would mess with it ... kind of raised a red flag.”
Steffen testified that after Lindsey was placed in the ambulance, Stanton told him to get the bag and not let one of the kids grab it before they left. As a result, Stef-fen stated he grabbed the bag after the game, took it onto the school bus, and placed it on a seat next to his wife. On the bus ride home, the coach received a telephone call from Lindsey, who again inquired about his bag and directed that the bag be given only to a specific friend. Upon arrival at Dunkerton, Steffen placed the bag in the commons area, in the lunch room. When Stanton arrived, he told Steffen he planned to search the bag. Steffen later saw the results of the search. Steffen stated he was aware that Lindsey was involved with possession of firearms and that he had been “in juvenile detention or something” for a while as a result.
The district court denied the motion to suppress. After canvassing the facts, the district court noted that the parties agreed that State v. Benjegerdes was the applicable Iowa appellate court decision to the issue presented in this case.[1] No. 09-1230, 2011 WL 3925411 (Iowa Ct.App. Sept. 8, 2011). The district- court noted that the analysis in Benjegerdes relied primarily on the United States Supreme Court case of New Jersey v. T.L.O., 469 U.S. 325, 105 *415 S.Ct. 733, 83 L.Ed.2d 720 (1985). Benjegerdes, 2011 WL 3925411, at *3.
The district court concluded that under T.L.O. the court should consider whether the search was justified at its inception and then whether the scope of the search was reasonable. According to the court) both- prongs were met. The court reasoned that the search was reasonable from the inception becausé of Lindsey’s unusual insistence that his bag be given to no one other than a specific friend as he lay injured on the field and in the phone call to the coach afterwards. Further, the court cited the distinctive metal sound Stanton heard when the bag hit the ground as supporting the search. The district court. concluded there was particularized suspicion under the totality of circumstances.
The court next turned to examine the scope of the search. The court reasoned that the scope of the search was justified given the reasons that gave rise to the search in the first place. In particular, the examination of the backpack inside the equipment bag was reasonable as the likely place to find the suspected firearm. While the court recognized Lindsey had a limited expectation of privacy in his equipment bag, such an interest was outweighed by the need to prevent the introduction of weapons into the school.
Lindsey appealed. We transferred the case to the court of appeals, which affirmed. We granted further review. We now affirm,
II. Standard of Review.
We review alleged violations of the right to be free from unreasonable searches and seizures de novo. State v. Tague, 676 N.W.2d 197, 201 (Iowa 2004). In conducting our de novo review, we independently evaluate the totality of the circumstances as shown by the entire record. State v. Kurth, 813 N.W.2d 270, 272 (Iowa 2012).
III. Discussion.
A. Introduction. The primary issue in this case is whether reasonable suspicion existed at the inception of the search. Although Lindsey concedes that the district court discussed the appropriate legal concepts, he,maintains the court misapplied them. According to Lindsey, the inceptioii of the search occurred in Riceville when the superintendent “requested that the head , coach collect the defendant’s bag for search at a later time.” Lindsey asserts that the school officials did not have reasonable suspicion to seize his bag at Rice-ville. According to Lindsey, all he did was ask .that a specific student be given his bag and that no one mess with it. That, according to Lindsey, is simply-insufficient to rise to the level of reasonable suspicion.
According, to Lindsey, the district court erred in its. reasonable-suspicion analysis when it considered the clang of metal that occurred after the equipment bag was seized and transported to Lindsey’s home school. What happened after the seizure — specifically the metallic clang heard by Stanton — is irrelevant to the- question of whether the seizure of the equipment bag in Riceville was lawful in the first place. Lindsey claims that supporting the search based on him asserting “a number of times that he did not want anyone to ‘mess’ with his stuff” is tantamount to permitting searches whenever anyone refuses to consent to a search.
The. State presents a layered counterargument. First, the State argues that the transportation of the bag from Rice-ville to Dunkerton was not a seizure. According to the State, the equipment bag was moved as part of routine student, activity and that the doctrine of in loco parentis authorized .the school to move a *416 student’s belongings back from an away football game. Second, the State argues the transport of the equipment bag did not violate Lindsey’s reasonable expectation of privacy or materially interfere with a pos-sessory interest.
B. Applicable United States Supreme Court Framework. Iowa is no stranger to questions regarding constitutional rights in public school settings. In State v. Bar-tels, we upheld the conviction of a teacher who taught German in school in violation of a statute prohibiting the teaching of any language except English to students below eighth grade. 191 Iowa 1060, 1074, 181 N.W. 508, 515 (1921). The Supreme Court, relying upon Meyer v. Nebraska, 262 U.S. 890, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), reversed. Bartels v. Iowa, 262 U.S. 404, 409, 411, 43 S.Ct. 628, 629-30, 67 L.Ed. 1047, 1050-51 (1923). In Meyer, the Supreme Court struck down a similar Nebraska statute as violating the liberty interests of teachers and parents under the Due Process Clause of the Fourteenth Amendment. Meyer, 262 U.S. at 403, 43 S.Ct. at 628, 67 L.Ed. at 1047; see also Bartels, 262 U.S. at 409, 43 S.Ct. at 629, 67 L.Ed. at 1050 (addressing statutes from Iowa, Nebraska, and Ohio).
Almost fifty years later, the Supreme Court considered another case involving the constitutional rights of students from Iowa. In Tinker v. Des Moines Independent Community School District, the United States Supreme Court reversed a district court opinion dismissing a complaint brought by students challenging a school’s prohibition of wearing black armbands on its property to protest the Vietnam War. 393 U.S. 503, 514, 89 S.Ct. 733, 740, 21 L.Ed.2d 731, 742 (1969). In memorable language, the Supreme Court declared that “[i]t can hardly be argued that either students or teachers shed their constitutional rights ... at the schoolhouse. gate.” Id. at 506, 89 S.Ct. at 736, 21 L.Ed.2d at 737. While Tinker is a seminal case, it dealt solely with the First Amendment rights of students. Id. at 505-06, 89 S.Ct. at 736, 21 L.Ed.2d at 737.
The question of whether students were protected from unlawful searches and seizures under the Fourth Amendment remained an open one for many years. The United States Supreme Court addressed this important issue in T.L.O., 469 U.S. at 333, 105 S.Ct. at 738, 83 L.Ed.2d at 729. In T.L.O., a teacher discovered a student and a classmate smoking cigarettes in a school lavatory in violation of a school rule. Id. at 328, 105 S.Ct. at 735, 83 L.Ed.2d at 726. They were taken to the principal’s office, where an assistant vice principal demanded to see the student’s purse. Id. at 329, 105 S.Ct. at 735-36, 83 L.Ed.2d at 726. Upon opening the purse, the assistant vice principal found a package of cigarettes and rolling papers associated with smoking marijuana. Id. at 328, 105 S.Ct. at 736, 83 L.Ed.2d at 726. The assistant vice principal searched the purse more thoroughly and found some marijuana, a pipe, plastic bags, a substantial amount of money, an index card with a list of students who owed the student money, and two letters implicating her in marijuana dealing. Id. As a result of the discovered contraband and a subsequent confession, the state brought delinquency charges against T.L.O. in juvenile court. Id. at 329, 105 S.Ct. at 736, 83 L.Ed.2d at 726. T.L.O. sought to suppress the evidence found in her purse as well as the later confession as fruits of an unlawful search. Id. The New Jersey Supreme Court suppressed the search, and the state appealed to the United States Supreme Court. Id. at 330-31, 105 S.Ct. at 736-37, 83 L.Ed.2d at 727-28.
The Supreme Court first determined that the strictures of the Fourth Amend *417 ment apply to activities of civil authorities, including school officials. Id. at 336-37, 105 S.Ct. at 740, 83 L.Ed.2d at 731. It rejected the notion that public schools merely exercise delegated parental authority conferred upon them by individual parents, but instead emphasized that school officials “act in furtherance of publicly mandated educational and disciplinary policies.” Id. at 336, 105 S.Ct. at 740, 83 L.Ed.2d at 731.
The Supreme Court next turned to consider what searches by school officials might be reasonable under the Fourth Amendment. Id. at 337, 105 S.Ct. at 740, 83 L.Ed.2d at 731. The Supreme Court declared that a determination of reasonableness requires “balancing the need to search against the invasion which the search entails.” Id. (quoting Camara v. Mun. Ct., 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930, 940 (1967)).
With respect to the student’s interest in privacy, the T.L.O. Court noted that “searches of closed items of personal luggage are intrusions on protected privacy interests.” Id. at 337, 105 S.Ct. at 740, 83 L.Ed.2d at 732. The Supreme Court stated, however, that “an expectation of privacy must be one that society is ‘prepared to recognize as legitimate.’ ” Id. at 338, 105 S.Ct. at 741, 83 L.Ed.2d at 732 (quoting Hudson v. Palmer, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393, 402 (1984)). The Court recognized that students in schools have legitimate interests in privacy. Id. at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733. The Court observed students might lawfully bring to school “highly personal items [such] as photographs, letters, and diaries,” but also may carry with them “articles of property needed in connection with extracurricular or recreational activities.” Id.
Balanced against the student’s interest in privacy, however, the Supreme Court recognized “the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds.” Id. The'Court emphasized that “maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures,” including “preserving the informality of the student-teacher relationship.” Id. at 339-40, 105 S.Ct. at 742, 83 L.Ed.2d at 733.
Having recognized the student’s interest in privacy and the school’s interest in maintaining discipline, the Supreme Court proceeded to balance the interests. Id. at 340, 105 S.Ct. at 742, 83 L.Ed.2d at 733. The Court déclared that searches in the school setting require some modification of the level of suspicion required. Id. While the Court noted that “probable cause and the requirement of a warrant bear on the reasonableness of a search ... in certain limited circumstances neither is required.” Id. at 340-41, 105 S.Ct. at 742, 83 L.Ed.2d at 733-34 (quoting Almeida-Sanchez v. United States, 413 U.S. 266, 277, 93 S.Ct. 2535, 2541, 37 L.Ed.2d 596, 605 (1973) (Powell, J., concurring)). The Supreme Court determined that in the school setting probable cause is not required for a search, but instead, a school search requires “reasonableness, under all the circumstances.” Id. at 341, 105 S.Ct. at 742, 83 L.Ed.2d at 734. In order for a search to meet this requirement, the search must be (1) justified at the time of its inception and (2) reasonable in terms of the scope of the search. Id. at 341, 105 S.Ct at 742-43, 83 L.Ed.2d at 734.
Having established this framework to analyze school searches, the Supreme Court recognized that the reasonable grounds standard applied by the New Jersey Supreme Court in suppressing the evidence in the case was “not substantially different.” Id. at 343, 105 S.Ct. at 743-44, *418 83 L.Ed.2d at 736. Nonetheless, the. Supreme Court held that the state court’s application of the standard “reflect[ed] a somewhat crabbed notion of reasonableness.” Id. at 343, 105 S.Ct. at 744, 83 L.Ed.2d at 736.
Looking at the facts of the case, the Court found two searches — one that yielded the cigarettes and a second that produced the marijuana and other evidence of involvement with drugs. Id. at 343-44, 106 S.Ct. at 744, 83 L.Ed.2d at 736. With respqct to the first search, the Court noted that T.L.O. was accused of smoking, which she denied, Id. at 345, 105 S.Ct. at 744, 83 L.Ed.2d at 737. Her purse was an obvious place to look for cigarettes. Id. at 345-46, 105 S.Ct. at 745, 83 L.Ed.2d at 737. The Court noted that the assistant vice principal’s conclusion that cigarettes might be in her purse was not an “inchoate and unpar-ticularized suspicion or ‘hunch’ ” but was “the sort of ‘common-sense conclusio[n] about human behavior’ upon which ‘practical people’ — including government officials — are entitled to rely.” Id. at 346, 105 S.Ct. at 745, 83 L.Ed.2d at 737 (first quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968); and then quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)).
The search- for cigarettes yielded not .only cigarettes but also rolling papers associated with marijuana use which gave rise to the reasonable belief that T.L.O; was carrying marijuana as well as cigarettes in her purse. Id. at 347, 105 S.Ct. at 745-46, 83 L.Ed.2d at 738. This suspicion justified further examination of her purse. Id. at 347, 105 S.Ct. at 746, 83 L.Ed.2d at 738.
Justices Brennan, Marshall, and Stevens dissented in part. Justice Brennan, joined by Justice Marshall, asserted that the only content to the reasonableness standard of the majority was that it was different -from the probable cause standard established by the Fourth Amendment. Id. at 354, 105 S.Ct, at 749, 83 L.Ed.2d at 743 (Brennan, J., concurring in part and dissenting in part). Justice Brennan conceded that school authorities could conduct the search o,f student belongings without a warrant. Id. at 355-56, 105 S.Ct. at 750, 83 L.Ed.2d at 744. He strongly objected, however, to casting aside the probable cause requirement. .Id. at 357, 105 S.Ct. at 751, 83 L.E.d.2d at 745.
Justice Stevens, joined by Justice Marshall and in part by Justice Brennan, filed a dissent in part that took issue With the sweep of the -majority opinion. Id. at 371, 105 S.Ct. at 758, 83 L.Ed.2d at 754 (Stevens, J., concurring in part and dissenting in part). Justices Stevens and Marshall thought the standard enunciated by the majority would allow, for example, searches for curlers or sunglasses to enforce a dress code. Id. at 377, 105 S.Ct. at 762, 83 L.Ed.2d at 758. Further, the New Jersey Supreme Court appeared to have applied the very same standard of the majority, and Justice Stevens argued that the state court’s application was the correct approach. Id. at 382-85, 105 S.Ct. at 764-66, 83 L.Ed.2d at 761-63.
Since T.L.O., the Supreme Court has decided' only a few search and seizure cases involving students and-school authorities. In Vernonia School District 47J v. Acton, the Supreme Court upheld a high school policy authorizing random drug testing of all student athletes. 515 U.S. 646, 648, 664-65, 115 S.Ct. 2386, 2388, 2396, 132 L.Ed.2d 564, 571, 582 (1995). The Court concluded that student athletes have a lesser expectation of privacy with respect to medical examinations and compliance with rules of conduct established for a given sport. Id. at 657, 115 S.Ct. at 2392-93, 132 L.Ed.2d at 577. The Court *419 found that legitimate privacy expectations are less for student athletes who routinely lack privacy in locker rooms and there is “an element of ‘communal undress’ inherent in athletic participation.” Id. at 657, 115 S.Ct. at 2392-93, 132 L.Ed.2d at 577 (quoting Schaill v. Tippecanoe Cty. Sch. Corp., 864 F.2d 1309, 1318 (7th Cir.1988)).
The decision in Vemonia emphasized a combination of factors, including the lesser expectation of privacy of student athletes and the unobtrusiveness of the particular method of drug testing at issue. Id. at 657-58, 115 S.Ct. at 2392-93, 132 L.Ed.2d at 577-78. Finally, the Court noted that the trial court found that at the1 high school in question, “‘a large segment of the student body .,. was in a state' of rebellion,’ that ‘[disciplinary actions had reached “epidemic proportions,” ’ and that ‘the rebellion was being fueled by alcohol and drug abuse as well as by the student’s misperceptions about the drug culture.’” Id. at 662-63, 115 S.Ct. at 2395, 132 L.Ed.2d at 580 (quoting Acton v. Vernonia Sch. Dist. 47J, 796 F.Supp. 1354, 1357 (D.Or.1992)).
Justice O’Connor, joined by Justices Stevens and Souter, dissented. Id. at 666, 115 S.Ct. at 2397, 132 L.Ed.2d at 583 (O’Connor, J., dissenting). They objected to the policy as a general search and therefore contrary to precedent and the philosophy of the Framers. ' Id. at 667, 669-70, 115 S.Ct. at 2397-99, 132 L.Ed.2d at 583-85. Justice O’Connor also criticized the choice of the school to focus its suspi-cionless drug testing on' athletes. Id. at 685, 115 S.Ct. at 2406, 132 L.Ed.2d at 595. She found it unreasonable to target student athletes, who were selected apparently for purposes of legal strategy, without factual support in the record for that distinction.- Id.
A mandatory drug test of all students participating in extracurricular activities was upheld in Board of Education of Independent School District No. 92 v. Earls, 536 U.S. 822, 838, 122 S.Ct. 2559, 2569, 153 L.Ed.2d 735, 749-50 (2002). The Earls Court stated that although students participating in extracurricular activities were not all subject' to the same privacy intrusions as athletes, extracurricular activities were nonetheless subject to substantial regulation. Id. at 831-32, 122 S.Ct. at 2565-66, 153 L.Ed.2d at 745-46. Because of the substantial regulation, students affected by the extracurricular drug testing policy had a diminished expectation of privacy. Id. at 832, 122 S.Ct. at 2566, 153 L.Ed.2d at 745-46. As in Vemonia, the Court emphasized the limited nature of the intrusion and the findings of fact of the trial court that the school in question had a drug problem. Id. at 834-35, 122 S.Ct. at 2567, 153 L.Ed.2d at 747.
.Justice Ginsburg, along with Justices Stevens, O’Connor, and Souter, dissented. Id. at 842, 122 S.Ct. at 2571, 153 L.Ed.2d at 752 (Ginsburg, J., dissenting). Justice Ginsburg noted that although students participating in competitive extracurricular activities were targeted, the underlying rationale applied to all school children. Id. at 844, 122 S.Ct. at 2572, 153 L.Ed.2d at 753-54. She further found extracurricular activities, though voluntary, were in fact part of the schools educational program. Id. at 845, 122 S.Ct. at 2573, 153 L.Ed.2d at 754. Justice'' Ginsburg then distinguished the random provision of urine samples in Vemonia, rioting that athletes have a reduced expectation of privacy and a special susceptibility to injury caused by use of illegal drugs, none of which were involved in Earls. Id. at 853-54, 122 S.Ct. at 2577, 153 L.Ed.2d at 759.
Finally, in Safford Unified School District No. 1 v. Redding, the Supreme Court considered the validity of a search of the person and property of a thirteen-year-old *420 female student suspected of possessing contraband including prescription-strength drugs. 557 U.S. 364, 368-69, 129 S.Ct. 2633, 2637-38, 174 L.Ed.2d 354, 360 (2009). School officials discovered a day planner belonging to Redding that contained knives and a cigarette. Id. at 368, 129 S.Ct. at 2638, 174 L.Ed.2d at 360. Red-ding admitted the day planner was hers, but said she had loaned the day planner to a friend and that none of the items inside it were hers. Id. The assistant principal then confronted her with several over-the-counter pain relievers and stated he had received a report that Redding was supplying pills to students in violation of school policy. Id. Redding denied the allegations and agreed to allow school officials to search her backpack. Id. No contraband was found. Id. The assistant principal then had a female school official search Redding’s clothing and perform a strip search. Id. at 369, 129 S.Ct. at 2638, 174 L.Ed.2d at 360. No pills were found. Id.
The Supreme Court applied the reasonableness standard of T.L.O. to determine the validity of the search. Id. at 375, 129 S.Ct at 2642, 174 L.Ed.2d at 364. The Court indicated that reliable information to support a search in the context of school authorities was information that raises “a moderate chance of finding evidence of wrongdoing,” a lesser standard than the “fair probability” required for a Terry[2] type search by law enforcement. Id. at 371, 129 S.Ct. at 2639, 174 L.Ed.2d at 362 (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)).
The Court found there was sufficient reliable information to justify the search of Redding’s backpack and outer clothing, but not for the strip search which exposed Redding’s breasts and pelvic area. Id. at 373-77, 129 S.Ct. at 2641-43, 174 L.Ed.2d at 363-65. The Supreme Court recognized that “distinct elements of justification on the part of school authorities for going, beyond a search of outer clothing and belongings” were required due to the high level of both “subjective and reasonable societal expectations of personal privacy” implicated by a strip search. Id. at 374, 129 S.Ct. at 2641, 174 L.Ed.2d at 364.
C. Court Cases Applying the Federal Framework.
1. Expectation of privacy when participating in athletics. T.L.O. generally established that the Fourth Amendment of the United States Constitution provides school students with a limited expectation of privacy in the school setting and that searches based upon individualized suspicion must be reasonable. 469 U.S. at 341, 105 S.Ct. at 742, 83 L.Ed.2d at 734. Ver-nonia then clarified that in the context of random drug searches “[Ilegitímate privacy expectations [of students] are even less with regard to student athletes.” 515 U.S. at 657, 115 S.Ct. at 2392, 132 L.Ed.2d at 577[3] (majority opinion); see Joye v. Hunterdon Cent. Reg’l High Sch. Bd. of Educ., 176 N.J. 568, 826 A.2d 624, 642 (2003). Yét, Vernonia did not involve a search based on individualized suspicion, but instead a random search which was minimal *421 ly intrusive in light of the communal nature of group athletic activity. 515 U.S. at 657, 115 S.Ct. at 2392-93, 132 L.Ed.2d at 577. Thus, under the Supreme Court’s approach to the Fourth Amendment student athletes still retain some expectation of privacy, but in at least some contexts— such as random drug testing — that expectation may be diminished under all the facts and circumstances. See Gruenke v. Seip, 225 F.3d 290, 301 (3d Cir.2000) (holding student athletes have very limited expectation of privacy).
2. History of prior infractions. In this case, it was undisputed that school authorities had knowledge that the student had a prior history of drug infractions and a weapons charge. To what extent is a prior history of discipline relevant in determining the reasonableness of a search of a student bag for drugs or contraband?
There is some authority for the proposition that a history of prior infractions is not, in and of itself, sufficient to support a search of a student without other factors. See M.M. v. Anker, 477 F.Supp. 837, 841-42 (E.D.N.Y.), aff'd, 607 F.2d 588, 589 (2d Cir.1979). In Anker, the court indicated that mere past involvement in theft was not sufficient cause, in and of itself, for a strip search of the student to recover missing property. Id. at 842.
Additionally, when prior infractions are used to justify a search there must be a linkage between the past violations and the wrongdoing sought to be discovered. For instance, in Commonwealth v. Damien D,, the student’s history of truancy did not provide reasonable suspicion for a search for contraband because there was no relationship between absence from the classroom and drug infractions. 434 Mass. 725, 752 N.E.2d 679, 683 (2001).
In most cases, however, the history of prior disciplinary problems • is combined with other factors to provide a reasonable basis for the search. For example, in Cornfield v. Consolidated High School District No. 230, the United States Court of Appeals for the Seventh Circuit upheld a search of a student with a past history of illicit activities when, among other things, a bus driver had smelled marijuana from the direction where the student was seated on the bus, the student had told a teacher he was constantly thinking about drugs, the student had reportedly said he was dealing drugs and-would test positive for marijuana, and he had a bulge in his pants when he had previously declared that he had “crotched” drugs during a police raid of his mother’s house. 991 F.2d 1316, 1322-23 (7th Cir.1993).
Similarly, in State ex. rel. Galford v. Mark Anthony B., the court found reasonable suspicion sufficient to initially justify a search when a student with a prior history of burglary was found to have had access as a janitor’s assistant to an empty classroom where $100 had been stolen from a teacher’s purse. 189 W.Va. 538, 433 S.E.2d 41, 42, 45 (1993). The scope of the search, however — which included pulling down the student’s underwear in a bathroom for inspection — was unreasonable in light of the relatively modest danger arising from a mere theft. Id. at 48-49.
Another illustrative case' is Coffman v. State, 782 S.W.2d 249 (Tex.Ct.App.1989). In that case, the court upheld the search of a student — who had a history of three or four disciplinary events — who was in the hallway when he should have been in class and told the school officials that he was returning from a parking lot where there had been recent thefts. Id. at 250. When the student was confronted, he placed a book bag behind himself, and when the school officials obtained possession of the bag, he lunged after it. Id. at 250-51. *422 Further, in State ex rel. Juvenile-Department of Washington County v. DuBois, the.court considered the search of a student' known to have brought weapons to the school on other occasions. 110 Or.App. 314, 821 P.2d 1124, 1125 (1991). Two other students reported that they had seen the student with a gun the day before and had heard the student was bringing the gun to school-on the day in question... Id. Recognizing that probable cause might be required under article I, .section 9 of the Oregon Constitution,, the court found.it unnecessary to reach the question because under the circumstances even the,higher standard was met. Id. at 1127.
3. Furtive movements or other suspicious indicia. In this case, the school authorities believed the student’s, comments gave rise to a reasonable suspicion that his equipment bag might contain something he did not want school officials to find. The question arises whether such behavior qualifies as. furtive acts supporting reasonable suspicion, or whether the comments were mere assertions of .the right to privacy.
An illustrative case is T.S. v. State, 100 So.3d 1289 (Fla.Dist.Ct.App.2012). In that case, a student carried her book bag in the halls during the school day, contrary to school, rules. Id. at 1290. -She was allowed to leave the bag in the school counselor’s office, which she did. .Id. Several times during the day the student sought and was denied access to the bag. Id. The school counselor wondered why she wanted access to the bag and decided to conduct a search. Id.
The Florida court held: the search was invalid. Id. at 1292. It noted the student involved had no history of illegal activity, the search was based on a mere hunch, and there -were many innocent explanations for the student’s behavior. Id. Sev- . eral other Florida cases have reached similar conclusions under varied fact patterns. See R.S.M. v. State, 911 So.2d 283, 284-85 (Fla.Dist.Ct.App;2005) (noting lack of reasonable suspicion when student reached “towards his pockets and then jerk[ed] his hands back”); S.V.J. v. State, 891 So.2d 1221, 1222-24 (Fla.Dist.Ct.App.2005) (holding.when a student looked startled and put her purse under her arm, and there was no prior complaint about drug use or other infractions involving student, the state did not have articulable facts sufficient to support search); A.H. v. State, 846 So.2d 1215, 1216 (Fla.Dist.Ct.App.2003) (holding an untrained teacher’s belief that something was not right with the student was insufficient to justify a search).
In In re William G., the California Supreme Court considered whether there was sufficient particularized suspicion to search a student who appeared to attempt to hide a calculator case when approached by school authorities. 40 Cal.3d 550, 221 Cal.Rptr. 118, 709 P.2d 1287, 1289 (1985) (en banc). The California court declared that the student’s
“furtive gestures” in attempting to hide his calculator case from [a school official’s] view cannot, standing aloné, furnish sufficient'cause to search. Similarly, [the student’s demand for a warrant did not create a reasonable suspicion upon which to base the search.
Id., 221. Cal.Rptr. 118, 709 P.2d at 1297 (citations omitted). Further, the court noted,
Such conduct merely constitutes [the student’s legitimate as’sertion of his constitutional right to privacy and to be free from unreasonable searches and • seizures— If a student’s limited right of privacy is to have any meaning, his attempt to exercise that' light — by shielding a private possession from a school official’s view — cannot itself trigger a “reasonable suspicion.”
*423 Id., 221 Cal.Rptr. 118, 709 P.2d at 1297-98 (emphasis added).
Ari effort to disown property, however, might give rise to reasonable suspicion. In In re Murray, school .authorities., received a tip that a student might have something in his book bag that should not be there. 136 N.C.App. 648, 525 S.E.2d 496, 497 (2000). When asked about his book bag, the student falsely stated the bag was not his. Id. at 498. According to the court, the false denial when coupled with the tip .was sufficient to support a search of the book bag. Id. at 499. The court stated the search was based upon “the sort of ‘common-sense conclusio[n] about human behavior’ upon which ‘practical people’ — including government officials — are entitled to rely.” Id. (quoting T.L.O., 469 U.S. at 346, 105 S.Ct. at 745, 83 L.Ed.2d at 737 (majority, opinion)).
There are some cases, however, where furtive gestures, if sufficiently suggestive, may provide reasonable suspicion for a search of a student. . In the, pre-T.L.O. case of State v. Young, a student appeared to jump up and put something down and then “ran his hand in his pants.” 234 Ga. 488, 216 S.E.2d 586, 588 (1975). The court found this curious behavior and an “obvious consciousness of guilt” sufficient to support a search. Id. at 593. A dissent noted, however, that the furtive gestures would be insufficient to support a search based on probable cause. Id. at 601 (Gunter, J., dissenting).
D. Iowa Caselaw. The parties have not directed our attention to Iowa caselaw applying the individualized reasonable suspicion approach of T.L.O. in a school setting. We have, however, considered the validity of a random locker search in State v. Jones, 666 N.W.2d 142, 143 (Iowa 2003). In Jones, the school had an annual winter break locker cleanout designed to prevent accumulation of trash and school supplies and to prevent violations of laws related to weapons and drugs. Id. at 144. Students were provided with notice that lockers would be checked with the student present. Id. Jones, however, did not follow the protocol and failed to show up for the cleanout. Id. School officials opened and searched Jones’s locker and found marijuana in the outside pocket of a coat in the locker. Id. We held that while Jones had a legitimate expectation of privacy in his school locker, the search was not invalid under the qircumstances presented. Id. at 148,150.
In sustaining the search in Jones, we determined that the approach in Earls presented the proper framework for analysis and not the individualized approach of T.L.O. Id. at 146. Under Earls, 'a court considers (1) “the nature of the privacy interest” at stake, (2) “the character of the intrusion,” and (3) “the nature and immediacy of the [schoolj’s concerns and the efficacy of the [search pjolicyin meeting them.” Egrls, 536 U.S. at 830, 832, 834, 122 S.Ct. at 2565-67, 153 L.Ed.2d at 744, 746-47 (majority opinion); Jones, 666 N.W.2d at 146. After analyzing these factors, ,we ■ upheld the random search conducted pursuant to-the established school district policy. Jones, 666 N.W.2d at 150.
E. Discussion.
1. Introduction. We begin by analyzing the case under the T.L.O. framework, which , the parties agreed in the district court provides the proper framework for analysis. In evaluating this search under the applicable fralnework provided by T.L.O., ,we must engage in a two-step process. The first question is-whether at the inception of the search “there are reasonable grounds for' suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of-the school.” T.L.O., *424 469 U.S. at 341—42, 105 S.Ct. at 743, 83 L.Ed.2d at 734-35. The second question is whether the scope of the search was “reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.” Id. at 342, 105 S.Ct. at 743, 83 L.Ed.2d at 735.
2. Reasonableness of the search or seizure at its inception. In this case, there is a substantial issue regarding when the search or seizure of the equipment bag occurred. The State suggests that the mere loading of the bag onto the bus and transporting it back to the home high school was not a seizure because this is exactly what would have happened to the bag after Lindsey’s injury if school authorities had no suspicion of illicit activity.
The State also suggests that because Lindsey was engaged in an athletic event, he had a reduced — perhaps even nonexistent — legitimate expectation of privacy in his school-issued equipment bag. It raises, among other things, the doctrine of in loco parentis, which, according to the State, suggests that a student athlete at an away game has no expectation of privacy in a bag used to carry athletic equipment.[4]
Yet, we conclude there is no need to address the issue of precisely when the search or seizure began or whether Lindsey had a reduced expectation of privacy in connection with a search of an equipment bag based on individualized suspicion because he was participating in an athletic event.[5] We conclude that even if the seizure occurred when Lindsey’s equipment bag was placed on the bus by school officials, and even assuming Lindsey had a legitimate expectation of privacy in his equipment bag under T.L.O. standards, school officials had a reasonable basis for the seizure and subsequent search under the Fourth Amendment as construed by the United States Supreme Court.
In considering the proper result in this case, we recognize that application of the T.L.O. amorphous standards “require[] great care to avoid abuse.”[6] Gerald S. *425 Reamey, New Jersey v. T.L.O.: The Supreme Court’s Lesson on School Searches, 16 St. Mary’s L.J. 933, 948-49 (1985). We recognize the importance of ensuring that the T.L.O. test is not applied in a fashion to give school authorities a carte blanche in all settings and circumstances. Yet, we also recognize that under T.L.O., the Supreme Court has moved away from a rule-based search and seizure jurisprudence toward a case-by-case method that will often turn on a careful and meticulous analysis of the facts of the case. See Konop ex rel. Konop v. Nw. Sch. Dist., 26 F.Supp.2d 1189, 1196 (D.S.D.1998) (noting that the T.L.O. holding is “difficult in its application” because of its fact intensive nature).
Recognizing the difficulties, we nonetheless reach the conclusion that the seizure and search in this case met T.L.O. standards. We reach this conclusion because the seizure of Lindsey’s bag was not based merely on his history of involvement with drugs and guns or merely upon somewhat suspicious or ambiguous furtive gestures. While there is substantial caselaw, for instance, that furtive gestures alone may not be enough to justify a search or seizure of a student bag, most of the cases with a combination of history and' suspicious actions on the part of the student sustain such government action. It may be under some circumstances that mere history or questionable behavior or conduct is not enough to support a search. But here, both history and suspicious conduct are present. See R.B. v. State, 975 So.2d 546, 548 (Fla.Dist.Ct.App.2008) (holding a history of drug use and a furtive gesture provided sufficient suspicion to justify a search).
Further, the suspicious statement here was not in any way caused by school officials but was volunteered by Lindsey. This is not a case where a student, in response to an action by school officials, seeks to prevent a threatened invasion of privacy as occurred in In re William G., 221 Cal.Rptr. 118, 709 P.2d at 1289; see also State v. Zelinske, 108 N.M. 784, 779 P.2d 971, 975 (N.M.Ct.App.1989) (stating refusal to consent cannot authorize a war-rantless search), overruled on other grounds by State v. Bedolla, 111 N.M. 448, 806 P.2d 588, 595 (N.M.Ct.App.1991); State v. Gilmour, 136 Or.App. 294, 901 P.2d 894, 896 (1995) (noting that “if both consent and refusal to consent provided ¿ases for officers to conduct searches, there would be no circumstances under which officers could not search”). According to Stanton, Lindsey — when on his back at the' football field-r-volünteered the words to the effect of “please make sure that Keota gets my bag.” Stanton further *426 reported that Lindsey said, “Don’t let anybody but Keota have my bag.” Coach Steffen largely confirmed Stanton’s account, noting that Lindsey “was pretty concerned about his bag and making sure that ... a certain kid would get the bag for him and that nobody would mess with it.” As noted by Steffen, Lindsey’s unprompted concern about his bag “raised a red flag,”
Unlike in In re William G. or the consent cases, here the student affirmatively and without any prompting by school officials made his request that responsibility for his bag be given to a specific studént. His comments were not designed to prevent officials from taking action, but were instead an affirmative request that officials hand over his bag to a specific student. Under the circumstances, Lindsey’s statements sought to control who gained possession of his bag, but did not assert privacy rights against an imminent threat of government intrusion as in In re William G. See 221 Cal.Rptr. 118, 709 P.2d at 1289.
Additionally, the request was not a mildly suspicious comment with lots of alternative innocuous explanations like when a student asks to retrieve a temporarily impounded bag at the administration office. See T.S., 100 So.3d at 1290; see also S.V.J., 891 So.2d at 1222. Given Lindsey’s potentially serious injury on the football field, it was truly odd for him. to be worried about who grabbed , his equipment bag to return it to ■ school. Lindsey’s volunteered request raised eyebrows considering his history of drug abuse and firearm violations.
Under T.L.O., the standard generally applicable to support a particularized search or seizure of a student bag is not probable cause. 469 U.S. at 341, 105 S.Ct. at 742, 83 L.Ed.2d at 734, Instead, a search or seizure must be reasonable under the circumstances. Id. As the Court later stressed in Redding, there must be at least “a moderate chance of finding evidence of wrongdoing.” 557 U.S. at 371, 129 S.Ct. at 2639, 174 L.Ed.2d at 362 (majority opinion).
Although drawing the line between a hunch and reasonable suspicion as required is often difficult, we conclude that in this case school officials were operating on a “ ‘common-sense conelusio[n] about human behavior’ upon which ‘practical people’ — including government officials — are entitled to rely.” T.L.O., 469 U.S. at 346, 105 S.Ct. at 745, 83 L.Ed.2d at 737 (quoting Cortez, 449 U.S. at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629). When Lindsey, a person who had been suspended from school for drug activity and had firearm charges in the past, expressed unprompted and unusual concern about his equipment bag when1 lying on the football field with a potentially ’serious injury, school authorities'reasonably saw at least a yellow flag, if not a red flag, indicating there was a fair chance that this troubled youth had drugs or guns in the equipment bag.
3. Scope of search. We now turn to the question of the reasonableness of the scope of the search. Under applicable federal law, a search is permissible in scope “when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.” Id. at 342, 105 S.Ct. at 743, 83 L.Ed.2d at 735. As indicated above, school authorities had sufficient reason to believe the equipment bag might contain drugs or a gun based on Lindsey’s history of involvement in drugs and guns and his curious concern about the equipment bag when immobilized on the football field with a potentially serious injury. When the school officials opened the bag and found another bag within, it was .reasonable for school officials to look in the second bag since drugs or guns *427 could reasonably be stored in it. Further, the fact the superintendent heard a loud thud when the bag hit the floor while the superintendent was preparing to conduct the search provided an additional reason to search in the second bag. The search was not excessively intrusive "in light of the objectives of the search.
It is, of course, true that' the search and seizure led to the discovery of a gun in the blue backpack. Lindsey claims that the loud clunk when the equipment bag hit the floor was hardly cause for thinking a gun was within the bag and that any such conclusion would be a wildly speculative hunch, not reasonable suspicion. The State’s .alternative stand-alone argument is that even if there was not reasonable suspicion to search the equipment, bag based on the statements by Lindsey, the loud clunk — -when combined, with knowledge of Lindsey’s past involvement with guns— gave school authorities sufficient particularized suspicion at that time to search the equipment bag. The school superintendent, who owned a handgun, .claimed that after he heard the noise he was “one hundred percent certain it was a gun,”
The parties have cited no authority with similar facts. We have uncovered one case that is somewhat instructive. In In re Gregory M., a school security officer heard a metallic thud when a student put a bag down on a shelf. 82 N.Y.2d 588, 606 N.Y.S.2d 579, 627 N.E.2d 500, 501 (1993). The security guard proceeded to feel the outside of the bag, which revealed a gun-like object in the bag. Id. A school official then. opened the bag and found the gun. Id. The New York court concluded that based solely on the metallic thud, the security officer did not have reasonable suspicion under T.L.O. to search the bag but that a feel of the outside of the bag was a minimal • intrusion that was reasonable even with the lack of particularized reasonable suspicion and was supportable under T.L.O. Id. Once the security officer felt the contours of the gun-like object, the security officer then at that point had sufficient particularized suspicion to support the further search of the bag. Id.
In light of our resolution of this case, however, we need not reach the issue of whether the loud thud was an insufficient basis for the search or was fruit of an unlawful seizure. Instead, we conclude that reasonable suspicion under T.L.O. existed prior to the.loud thud and that the loud thud merely provided additional reason to press the search into the blue backpack contained within the equipment bag.
4. Applicability of analysis under the Iowa Constitution. In this case, Lindsey cites both the Fourth Amendment and article I, section 8 of the Iowa Constitution in support of his claim. A conclusbry reference to the Iowa Constitution was raised below. -' On appeal, however, Lindsey agrees that the standard established ’by T.L.O. and its progeny provide the relevant framework for analysis under' the Iowa Constitution.[7] Because Lindsey has not suggested an independent standard under the Iowa Constitution, we apply the federal framework for the purpose of this case but reserve the right to apply that framework in a fashion different from federal easelaw; States v. Lyle, 854 N.W.2d 378, 383-84 (Iowa 2014); State v. Pals, 805 N.W.2d 767, 771-72 (Iowa 2011); State v. Bruegger, 773 N.W.2d 862, 883 (Iowa 2009).
Obviously, the standard Of reasonability is not a verbal' formula that lends itself “to *428 easy quantification, clear classification, or easily administered criteria.” Barry C. Feld, T.L.O. and Redding’s Unanswered (Misanswered) Fourth Amendment Questions: Few Rights and Fewer Remedies, 80 Miss. L.J. 847, 896 (2011).[8] Indeed, in T.L.O. itself, the New Jersey Supreme Court — where the case originated — used a standard very similar to that ultimately approved in T.L.O. 469 U.S. at 343, 105 S.Ct. at 743-44, 83 L.Ed.2d at 736; see State in re T.L.O., 94 N.J. 331, 463 A.2d 934, 942 (1983), rev’d, T.L.O., 469 U.S. at 348, 105 S.Ct. at 746, 83 L.Ed.2d at 738. The United States Supreme Court, however, viewed the New Jersey court’s application as manifesting a “crabbed notion of reasonableness.” T.L.O., 469 U.S. at 343, 105 S.Ct. at 744, 83 L.Ed.2d at 736.
In this case, the parties have litigated within the framework of federal caselaw. We find the search falls within the.general parameters of reasonableness as outlined in T.L.O. Under our cases, when a party does not present an independent standard under Iowa law, we may still apply the federal standard more stringently than the federal caselaw. But the standard for whether the search of Lindsey’s equipment bag and the backpack within it was constitutionally permissible is whether the search has a moderate chance of uncovering wrongdoing. -We think that standard was met. In this case we thus do not find an independent violation of article I, section 8 of the Iowa-Constitution.[9]
IV. Conclusion.
For all the above reasons, the judgment of the district court is affirmed.
DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.
All justices concur except MANSFIELD and WATERMAN, JJ., who concur specially, and WIGGINS, J., who dissents.

. Under Iowa Rule of Appellate Procedure 6.904(2)(c), unpublished decisions of the court of appeals do not constitute binding • authority on appeal. The parties' agreement that the applicable Iowa appellate decision was Benjegerdes, however,' helps define the issues actually before the district court and properly before us on appeal.

. Terry v. Ohio, 392 U.S, 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding stop and frisk searches reasonable).

. Two state supreme courts have declined to follow Vernonia under state constitutional search and seizure provisions. See Theodore v. Del Valley Sch. Dist., 575 Pa. 321, 836 A.2d 76, 90, 96 (2003) (invalidating school district drug and alcohol testing policy for extracurricular activities under article I, section 8 of the Pennsylvania Constitution); York v. Wahkiakum Sch. Dist. No. 200, 163 Wash.2d 297, 178 P.3d 995, 1006 (2008) (en banc) (invalidating suspicionless drug testing under article I, section 7 of the Washington Constitution).

. The Supreme Court in T.L.O. rejected the in loco parentis doctrine — which literally means "in place of a parent” — the theory that the Fourth Amendment does not apply to a school official’s search of a student through parental delegation, just as it does not apply to a parent’s search of their child. T.L.O., 469 U.S. at 336, 105 S.Ct. at 740, 83 L.Ed.2d at 731; see generally 5 Wayne R. LaFave, Search & Seizure, § 10.11(a), at 593-97 (5th ed.2012), [hereinafter LaFave]. According to LaFave, the doctrine "is frequently used only as a slogan” and has become “a substitute for analysis.” LaFave, § 10.11(a), at 597. Yet, in Vemonia and in Earls the Supreme Court, while not reestablishing the applicability of in loco parentis to school searches, nonetheless emphasized the role of educational institutions as guardians and providers of tutelage. See Earls, 536 U.S. at 830-31, 122 S.Ct. at 2565, 153 L.Ed.2d at 745; Vernonia, 515 U.S. at 665, 115 S.Ct. at 2396, 132 L.Ed.2d at 582.

. While this lessened expectation of privacy has been applied by the Supreme Court in the context of random drug testing of student athletes, the search of the blue backpack within Lindsey’s equipment bag is arguably distinguishable as it does not implicate exposures of the body so central in the Vemonia analysis and, additionally, involves a particularized individual search under T.L.O. and not a generalized search.

. See Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 827 (11th Cir.1997) ("[N]ot only does the language used by the [T.L.O.] Court to announce a legal standard regarding the permissible scope of a reasonable school search lack specificity but, it appears, purposefully so.” (Footnote omitted.)); Williams v. Ellington, 936 F.2d 881, 886 (6th Cir.1991) (noting that the reasonableness standard of T.L.O. has left courts “either reluctant or unable to define what type of official conduct” is prohibited). The amorphous and open-ended nature of the T.L.O. analysis has been frequently noted in the academic literature. See Neal I. Aizenstein, Casenote, Fourth Amendment — Searches by Public School Officials *425 Valid on 'Reasonable Grounds’, 76 J. Crim. L. & Criminology 898, 923 (1985) (noting the reasonable grounds standard lacks authority and promotes inconsistency in caselaw); David C. Blickenstaff, Strip Searches of Public School Students: Can New Jersey v. T.L.O. Solve the Problem?, 99 Dick. L. Rev. 1, 44-45 (1994) (noting differences among courts in applying T.L.O. standards to strip searches); Martin R. Gardner, Student Privacy in the Wake of T.L.O.: An Appeal for an Individualized Suspicion Requirement for Valid Searches and Seizures in the Schools, 22 Ga. L. Rev. 897, 920 (1988) [hereinafter Gardner] (noting the abandonment of rule-based search and seizure jurisprudence for a case-by-case anal- ' ysis of reasonableness); Sunil H. Mansukha-ni. School Searches After New Jersey v, T.L.O.: Are There Any Limits?,. 34 U, Louisville J. Fam. L. 345, 360-61 (1996) (noting T.L.O. ’s reasonableness standard fails to provide clear test); Stephen F. Shatz et ah, The Strip Search of Children and the Fourth Amendment, 26 U.S.F. L. Rev. 1, 9 (1991) (noting vague reasoning and a lack of stated standards in T.L.O.). Given the nature of the test, wé recognize the words of caution of Judge Pos-ner that “[t]here is almost no legal outcome that a really skillful legal analyst cannot cover with a professional varnish.” Richard A. Pos-ner, Foreward: A Political Court, 119 Harv. L. Rev. 31, 52 (2005).

. Lindsey does not cite, for instance, the dissents in T.L.O., courts of other states relying upon independent analysis of search and seizure requirements under state constitutions, or academic criticism of T.L.O. and its progeny.

, For criticism of reasonability and balancing tests in search and seizure, seé Anthony G. ' Amsterdam, Perspectives on the Fourth Amendment, 58 Minn. L. Rev. 349, 393-95 (1974) (critiquing reasonableness and balancing), and Gardner, 22 Ga. L. Rev. at 919-25. See also State v. Short, 851 N.W.2d 474, 485-86 (Iowa 2014).

. Other states have found independent violations of the right to be free from unreasonable searches and seizures under their state constitutions. For instance, the Oregon Supreme Court has- emphasized that under article I, section 9 of the Oregon Constitution, the privacy protected "is not privacy that one reasonably expects but the privacy to which one has a right." See State ex rel. Juvenile Dep't of Clackamas Cty. v. M.A.D., 348 Or. 381, 233 P.3d 437, 441 (2010) (en banc) (quoting State v. Howard, 342 Or. 635, 157 P.3d 1189, 1193 (2007)).